UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

    Plaintiff,

v.

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY
SCHOOL OF MEDICINE,
NIKOLINA CAMAJ, MARGIT
CHADWELL, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

    Defendants.

Case No: 20-cv-11718

Hon. Gershwin A. Drain
Mag. Judge David R. Grand

---

| | |
|---|---|
| Mark C. Rossman (P63034)<br>Elizabeth M. Vincent (P76446)<br>ROSSMAN, P.C.<br>Attorneys for Plaintiff<br>2145 Crooks Road, Suite 220<br>Troy, MI  48084<br>(248) 385-5481<br>mark@rossmanpc.com<br>liz@rossmanpc.com<br><br>J. Robert Flores<br>Attorney for Plaintiff<br>10410 Hampton Road<br>Fairfax Station, VA  22039<br>(703) 609-8731<br>rfloresesq@verizon.net | KIENBAUM HARDY VIVIANO<br> PELTON & FORREST, P.L.C.<br>By: Elizabeth Hardy (P37426)<br>    David A. Porter (P76785)<br>Attorneys for Defendants<br>280 N. Old Woodward Ave., Suite 400<br>Birmingham, MI  48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>dporter@khvpf.com |

**Declaration of Dr. Herman Gray**

In accordance with 28 U.S.C. § 1746, Dr. Herman Gray declares the following:

1. I make this declaration based on personal knowledge of the facts stated herein or Wayne State University business records to which I have access and am able to so testify under oath if called upon to do so.

2. My name is Dr. Herman Gray. I am currently Chair, Department of Pediatrics, at Wayne State University School of Medicine. I have been a member of the School of Medicine's Promotions Committee since 2018 and was a member in 2019 when then-second-year medical student Anthony Eid came before the Promotions Committee.

3. Pursuant to the School of Medicine Student Handbook, the Promotions Committee is charged with the responsibility of reviewing each student's overall academic performance, which includes overall professionalism performance. (Handbook, p. 56.) A true and correct copy of the School's Student Handbook as it existed at the time of Mr. Eid's Professionalism Committee and Promotions Committee hearings is attached as Exhibit A.

4. As set forth in the Promotions Committee Bylaws, the Promotions Committee is a standing committee of the School of Medicine's Faculty Senate, formed in accordance with the standards established by the Liaison Committee on Medical Education, the accreditation body for medical schools in the United States.

1

Pursuant to the committee's bylaws, "The Promotions Committee is the final decision-making entity at the WSUSOM with regard to the promotions and graduation process and has the responsibility of determining the student's fitness and suitability for the study and practice of medicine." The committee is comprised of eight voting members (five of which constitute a quorum) and 12 non-voting members, including the Chair. A true and correct copy of the School's Promotions Committee Bylaws as they existed at the time of Mr. Eid Promotions Committee hearings is attached as Exhibit B.

5. As set forth in the Handbook, evaluation of a student's total performance includes an assessment of whether the student adheres to the School's core professionalism standards. The Professionalism Committee, which is a separate committee from the Promotions Committee, is primarily charged with developing and enforcing appropriate professional behaviors in medical students. It is responsible for adjudicating professionalism breaches through appropriate means. But the Professionalism Committee does not have the authority to dismiss medical students. Only the Promotions Committee does. Thus, if the Professionalism Committee concludes that a professionalism infraction warrants dismissal, it must refer the student to the Promotions Committee with a recommendation for dismissal, as happened in Mr. Eid's case. In deciding whether dismissal is justified, the

2

Promotions Committee considers not only the issue that brought the student before the committee, but also the student's overall academic performance.

6. As a faculty member and member of the Promotions Committee, I am well aware of the professionalism standards of the School's curriculum. As set forth in the Handbook, medical students are considered physicians in training and must demonstrate that they are capable of becoming safe and effective physicians. To do so, students must display good judgment and a sense of responsibility and morality, among other traits. In particular, they must adhere to the School's professionalism standards, which are: Professional Responsibility, Competence and Self-Improvement, Respect for Others and Professional Relationships, Honesty and Academic Integrity, Personal Responsibility, and Social Responsibility. A full description of each professionalism standard is contained in the Professionalism Committee Bylaws, a true and correct copy of which as they existed at the time of Mr. Eid's Professionalism Committee hearing is attached as Exhibit C.

7. The School of Medicine expects students to adhere to these professionalism standards from matriculation to graduation, both inside and outside the classroom and clinical setting. Professionalism is such an important part of the School of Medicine's program that it is listed in the Handbook as one of nine Institutional Domains of Competency and is part of the School's Technical Standards for graduation. (Handbook, pp. 18, 23.)

3

8. I attended Mr. Eid's Promotions Committee hearing on February 27, 2019, as a voting member of the committee. Five other voting members were present. The hearing was scheduled to begin at 8:00 a.m. but was delayed approximately 20 to 30 minutes because of inclement weather.

9. At the beginning of the hearing, Mr. Eid was introduced to the members of the committee and given an opportunity to make a statement. Mr. Eid took full advantage of the opportunity and was allowed to make a statement, including reading prepared remarks, without interruption. During his remarks, I observed Mr. Eid read his written statement with little evidence of emotion. His statement reflected little self-awareness of the seriousness of the situation, little to no remorse, and he accepted little responsibility for his actions.

10. After Mr. Eid finished his remarks, members of the committee asked questions of Mr. Eid. The questions were geared toward gaining insight into whether Mr. Eid understood the professionalism concerns raised by his conduct—namely, the troubling false and misleading texts that he admitted to sending to Roe—and its bearing on his fitness to be a medical doctor. In response, Mr. Eid provided evasive answers that attempted to shift the blame for his professionalism failures to others. Inconsistencies in his answers or conflicting answers suggested he was avoiding telling the truth. Generally, his answers were often confusing or misleading, casting

serious doubt on the veracity of his presentation to the committee. It was difficult to know what to believe.

11. Mr. Eid's answers did not show a genuine appreciation for the serious professionalism concerns raised by his conduct. Whereas in his prepared remarks and written statements, Mr. Eid purported to acknowledge the grave professionalism issues surrounding his conduct, when questioned by committee members, Mr. Eid's contemporaneous responses revealed a deep-seated skepticism that his conduct had any bearing on his fitness to be a doctor. As noted in the minutes of the committee hearing, "At no point during the enquiry did [Eid] admit to any wrongdoing on his part[,] which was extremely concerning to the committee."

12. After a lengthy question-and-answer session, Mr. Eid left the room so that the committee members could deliberate in private.

13. During deliberations, the committee members did not discuss the young woman whose complaint brought Mr. Eid to the attention of the medical school ("Jane Roe").[1] Nor did committee members discuss whether Mr. Eid or Ms. Roe was telling the truth about various facets of the underlying conduct that brought Eid before the Professionalism Committee. That was irrelevant to the Promotions Committee's charge, which was to evaluate Mr. Eid's conduct and demeanor to

---

[1] I understand that the parties have referred to this person as "Jane Roe" throughout the litigation. I follow that designation in this declaration.

determine whether his conduct fell below the standards of professionalism and whether he was capable of genuine self-improvement to consistently adhere to those high standards in the future.

14. As reflected in Mr. Eid's written statements and in his oral remarks to the committee, Mr. Eid admitted to repeatedly lying and misrepresenting facts in his communications to Ms. Roe. Dishonesty and deceitful conduct—especially when coupled with appeals to authority like Apple and law enforcement in an effort to pressure a member of the public to disclose private information—raise serious professionalism concerns.

15. Equally important, however, is whether the student has self-awareness and the capacity for self-improvement. Given the inconsistencies in his written statements between his purported acknowledgement of wrongdoing and his assertions that it did not bear on his fitness to be a doctor, members of the committee sought to learn whether Mr. Eid *sincerely* understood the severity of character deficiency and whether he had the capacity for self-improvement. Mr. Eid's conduct before the committee established without question that he lacked the capacity for the kind of fundamental change necessary to avoid similar professionalism lapses in the future.

16. After careful and deliberate deliberation with my fellow committee members, I voted to dismiss Mr. Eid from the School because of unprofessional

6

behavior including dishonesty, demonstrated lack of respect for Jane Roe, inappropriate and unprofessional interactions with Jane Roe, failure to take responsibility for his actions and lack of self-reflection. I was concerned that given Mr. Eid's behavior in this situation, as a physician caring for vulnerable patients, his patients could be taken advantage of and/or harmed. I and the other members of the Promotions Committee arrived at the same disappointing conclusion as the Professionalism Committee's recommendation for dismissal. Mr. Eid's admitted conduct of sending false and misleading texts to a member of the public to gain their private information failed to live up to the School's high professionalism standards, including the expectation of honesty and integrity and respect for others. Based on my observation of Mr. Eid's demeanor and the evasive, combative nature of his responses, I determined that Mr. Eid's purported claims of contrition in writing and before the committee were completely insincere, said only to placate members of the committee—a troubling confirmation that Mr. Eid did not have the capacity for self-awareness, self-improvement, and personal responsibility.

17. As with every dismissal decision, the decision to vote in favor of dismissing Mr. Eid from medical school was very difficult, but it was necessary. The behavior and attitude Mr. Eid displayed during his Promotions Committee hearing showed that Mr. Eid showed no genuine remorse, that he was dishonest, evasive and not trustworthy. I concluded that Mr. Eid had a seriously flawed character in terms

7

of his ability to conform his conduct to the standards of professional conduct expected of doctors and medical students. Simply put, in my expert, considered judgment, Mr. Eid was unfit to be a medical doctor.

18. The rest of the voting members also voted in favor of dismissal. The meeting ended at 10:35 a.m., over 30 minutes longer than the usual meeting.

19. The Promotions Committee decision was not a disciplinary decision, but an academic decision based on each individual committee member's subjective evaluation of Mr. Eid's fitness to be a medical doctor as judged by his adherence to, and appreciation for, the School's academic professionalism standards.

20. Mr. Eid's gender played no role in my decision to dismiss him from medical school. My decision was not based on whether I believed Ms. Roe as opposed to Mr. Eid. Ms. Roe did not appear before the Promotions Committee, Mr. Eid did. I therefore had no opportunity or reason to weigh the credibility of Ms. Roe against Mr. Eid. If there were any disagreements between them, they were immaterial to my decision, which was based solely on Mr. Eid's conduct, including his oral and written statements and his presentation before the committee.

21. At the time of Mr. Eid's hearing, I had no knowledge of any investigation of Wayne State University or the School of Medicine by the U.S. Department of Education's Office of Civil Rights. I had no knowledge of the U.S.

8

Department of Education's Office of Civil Rights' 2011 "Dear Colleague" Letter to colleges and universities regarding Title IX requirements.

I declare under penalty of perjury that the foregoing is true and correct.

_____<br>Dr. Herman Gray

Executed on January __, 2022

437263

9