UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

    Plaintiff,

v.

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY
SCHOOL OF MEDICINE,
NIKOLINA CAMAJ, MARGIT
CHADWELL, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

    Defendants.

Case No: 20-cv-11718

Hon. Gershwin A. Drain
Mag. Judge David R. Grand

_____/

| | |
|---|---|
| Mark C. Rossman (P63034)<br>Elizabeth M. Vincent (P76446)<br>ROSSMAN, P.C.<br>Attorneys for Plaintiff<br>2145 Crooks Road, Suite 220<br>Troy, MI  48084<br>(248) 385-5481<br>mark@rossmanpc.com<br>liz@rossmanpc.com<br><br>J. Robert Flores<br>Attorney for Plaintiff<br>10410 Hampton Road<br>Fairfax Station, VA  22039<br>(703) 609-8731<br>rfloresesq@verizon.net | KIENBAUM HARDY VIVIANO<br> PELTON & FORREST, P.L.C.<br>By: Elizabeth Hardy (P37426)<br>    David A. Porter (P76785)<br>Attorneys for Defendants<br>280 N. Old Woodward Ave., Suite 400<br>Birmingham, MI  48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>dporter@khvpf.com |

_____/

**Declaration of Dr. Rodney D. Braun**

In accordance with 28 U.S.C. § 1746, Dr. Rodney D. Braun declares the following:

1. I make this declaration based on personal knowledge of the facts stated herein or Wayne State University business records to which I have access and am able to so testify under oath if called upon to do so.

2. My name is Dr. Rodney D. Braun. I am currently an Associate Professor at Wayne State University School of Medicine. I have been a member of the School of Medicine's Promotions Committee since 2013 and was a member in 2019 when then-second-year medical student Anthony Eid came before the Promotions Committee.

3. As a faculty member and member of the Promotions Committee, I am well aware of the professionalism standards of the School's curriculum. As set forth in the School's Handbook, medical students are considered physicians in training and must demonstrate that they are capable of becoming safe and effective physicians. To do so, students must display good judgment and a sense of responsibility and morality, among other traits. In particular, they must adhere to the School's professionalism standards, which are: Professional Responsibility, Competence and Self-Improvement, Respect for Others and Professional Relationships, Honesty and Academic Integrity, Personal Responsibility, and Social Responsibility.

1

4. I attended Mr. Eid's Promotions Committee hearing on February 27, 2019, as a voting member of the committee. Five other voting members were present. The hearing was scheduled to begin at 8:00 a.m. but was delayed approximately 20 to 30 minutes because of inclement weather.

5. At the beginning of the hearing, Mr. Eid was introduced to the members of the committee and given an opportunity to make a statement. Mr. Eid took full advantage of the opportunity and was allowed to make a statement, including reading prepared remarks, without interruption.

6. After Mr. Eid finished his remarks, members of the committee asked questions of Mr. Eid. The questions were geared toward gaining insight into whether Mr. Eid understood the professionalism concerns raised by his conduct—namely, the troubling false and misleading texts that he admitted to sending to Ms. Roe—and its bearing on his fitness to be a medical doctor. In response, Mr. Eid provided evasive answers that attempted to shift the blame for his professionalism failures to others. Specifically, I questioned Mr. Eid at the hearing based on some items he addressed in his statement to the committee and the materials provided, e.g., copies of the text messages. When reading his statement to the Promotions Committee, I was struck by his compartmentalization of the incident and his ability to separate Ms. Roe from the students and faculty with whom he interacted at the Medical School. For instance, in his statement he claimed that she was not associated with

the medical school, and so his behavior and actions during this incident should have no bearing on his status at the medical school. He raised this point multiple times. For example, he wrote: "I think it is also important to note that the actions in themselves are not a medical school issue, but rather a civil one in my eyes. My accuser was not a student at the time the alleged incident took place and was only a student at this university for one semester (to the best of my knowledge), so I do not understand how this could fall under student mistreatment. … I would like to reiterate that this whole situation has no bearing, in any way on my studies, my future patients, or any other members of the SOM community." He also wrote the following regarding his potential dismissal: "Would it help the students or faculty of this school? No, she was not a student, and if she were I am sure I would have chosen different actions."  When I read these alarming statements before the hearing, they gave me the impression that Mr. Eid was very self-serving and had different views and standards of treatment for people depending on whether they might be valuable to his future plans. They also showed a total lack of understanding of what it means to be an ethical professional. I was also troubled by the fact that, in some of his texts, he mentioned his status at the medical school, e.g., he was an important student and leader at the medical school, to try to pressure and influence Ms. Roe. This was especially disturbing since he had noted in his statement that he reached out to her because she was in a depressed state. These attempts to pressure a vulnerable person

3

using his status are also totally inconsistent with what is expected of a future physician. Based on these comments in his statement, I asked him numerous questions during the hearing. I also asked him about a discrepancy between his statement and the supplied materials. His answers showed a lack of understanding of the school's professionalism expectations and did nothing to lessen my concerns. I did not feel that he sincerely felt responsibility or remorse for his actions. At the end of the hearing, I had serious concerns about his character and his ability to uphold the standards of professional conduct expected of doctors and medical students.

7. Mr. Eid's answers did not show a genuine appreciation for the serious professionalism concerns raised by his conduct. Whereas in his prepared remarks and written statements, Mr. Eid purported to acknowledge the grave professionalism issues surrounding his conduct, when questioned by committee members, Mr. Eid's contemporaneous responses revealed a deep-seated skepticism that his conduct had any bearing on his fitness to be a doctor. As noted in the minutes of the committee hearing, "At no point during the enquiry did [Eid] admit to any wrongdoing on his part[,] which was extremely concerning to the committee."

8. After a lengthy question-and-answer session, Mr. Eid left the room so that the committee members could deliberate in private.

4

9. During deliberations, the committee members did not discuss the young woman whose complaint brought Mr. Eid to the attention of the medical school ("Jane Roe").[1] Nor did committee members discuss whether Mr. Eid or Ms. Roe was telling the truth about various facets of the underlying conduct that brought Eid before the Professionalism Committee. That was irrelevant to the Promotions Committee's charge, which was to evaluate Mr. Eid's conduct and demeanor to determine whether his conduct fell below the standards of professionalism and whether he was capable of genuine self-improvement to consistently adhere to those high standards in the future.

10. As reflected in Mr. Eid's written statements and in his oral remarks to the committee, Mr. Eid admitted to repeatedly lying and misrepresenting facts in his communications to Ms. Roe. Dishonesty and deceitful conduct—especially when coupled with appeals to authority like Apple and law enforcement in an effort to pressure a member of the public to disclose private information—raise serious professionalism concerns.

11. Equally important, however, is whether the student has self-awareness and the capacity for self-improvement. Given the inconsistencies in his written statements between his purported acknowledgement of wrongdoing and his

---

[1] I understand that the parties have referred to his person as "Jane Roe" throughout the litigation. I follow that designation in this declaration.

assertions that it did not bear on his fitness to be a doctor, members of the committee sought to learn whether Mr. Eid *sincerely* understood the severity of character deficiency and whether he had the capacity for self-improvement. Mr. Eid's conduct before the committee established without question that he lacked the capacity for the kind of fundamental change necessary to avoid similar professionalism lapses in the future.

12. After careful and deliberate deliberation with my fellow committee members, I voted to dismiss Mr. Eid from the School because he demonstrated serious character flaws that made me question his ability to be an ethical member of the medical profession who would exhibit the high levels of professionalism and integrity expected of physicians. I was especially concerned and troubled by his apparent lack of sincere contrition, his willingness to use his standing as a means to influence people, and his ability to compartmentalize his behavior to seemingly independent nonprofessional and professional spheres. In addition, Mr. Eid's admitted conduct of sending false and misleading texts to a member of the public to gain their private information failed to live up to the School's high professionalism standards, including the expectation of honesty and integrity and respect for others. Based on my observation of Mr. Eid's demeanor and the evasive, combative nature of his responses, I determined that Mr. Eid's purported claims of contrition in writing and before the committee were completely insincere, said only to placate members

6

of the committee—a troubling confirmation that Mr. Eid did not have the capacity for self-awareness, self-improvement, and personal responsibility.

13. As with every dismissal decision, the decision to vote in favor of dismissing Mr. Eid from medical school was very difficult, but it was necessary. The behavior and attitude Mr. Eid displayed during his Promotions Committee hearing showed that he demonstrated a lack of appreciation of the professional behaviors required of a future physician and an unwillingness or inability to sincerely accept responsibility for his actions. I concluded that Mr. Eid had a seriously flawed character in terms of his ability to conform his conduct to the standards of professional conduct expected of doctors and medical students. Simply put, in my expert, considered judgment, Mr. Eid was unfit to be a medical doctor.

14. The rest of the voting members also voted in favor of dismissal. The meeting ended at 10:35 a.m., over 30 minutes longer than the usual meeting.

15. The Promotions Committee decision was not a disciplinary decision, but an academic decision based on each individual committee member's subjective evaluation of Mr. Eid's fitness to be a medical doctor as judged by his adherence to, and appreciation for, the School's academic professionalism standards.

16. Mr. Eid's gender played no role in my decision to dismiss him from medical school. My decision was not based on whether I believed Ms. Roe as opposed to Mr. Eid. Ms. Roe did not appear before the Promotions Committee, Mr.

7

Eid did. I therefore had no opportunity or reason to weigh the credibility of Ms. Roe against Mr. Eid. If there were any disagreements between them, they were immaterial to my decision, which was based solely on Mr. Eid's conduct, including his oral and written statements and his presentation before the committee.

17. At the time of Mr. Eid's hearing, I had no knowledge of the U.S. Department of Education's Office of Civil Rights' 2011 "Dear Colleague" Letter to colleges and universities regarding Title IX requirements. I had no knowledge of any investigation of Wayne State University or the School of Medicine initiated by the U.S. Department of Education's Office of Civil Rights prior to 2018. In late 2018 or 2019, I heard in passing about an investigation involving allegations of harassment, which supposedly involved the U.S. Department of Education's Office of Civil Rights. I had no knowledge of the outcome of the investigation at that time, and it had absolutely no influence on my decision-making process in Mr. Eid's case.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Dr. Rodney D. Braun

Executed on January 28, 2022

437259

8