UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

    Plaintiff,

v.

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY
SCHOOL OF MEDICINE,
NIKOLINA CAMAJ, MARGIT
CHADWELL, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

    Defendants.

Case No: 20-cv-11718

Hon. Gershwin A. Drain
Mag. Judge David R. Grand

_____/

| | |
|---|---|
| Mark C. Rossman (P63034)<br>Elizabeth M. Vincent (P76446)<br>ROSSMAN, P.C.<br>Attorneys for Plaintiff<br>2145 Crooks Road, Suite 220<br>Troy, MI 48084<br>(248) 385-5481<br>mark@rossmanpc.com<br>liz@rossmanpc.com<br><br>J. Robert Flores<br>Attorney for Plaintiff<br>10410 Hampton Road<br>Fairfax Station, VA 22039<br>(703) 609-8731<br>rfloresesq@verizon.net | KIENBAUM HARDY VIVIANO<br> PELTON & FORREST, P.L.C.<br>By: Elizabeth Hardy (P37426)<br>    David A. Porter (P76785)<br>Attorneys for Defendants<br>280 N. Old Woodward Ave., Suite 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>dporter@khvpf.com |

_____/

**Declaration of Dr. Eva Waineo**

In accordance with 28 U.S.C. § 1746, Dr. Eva Waineo declares the following:

1.      I make this declaration based on personal knowledge of the facts stated herein or Wayne State University business records to which I have access and am able to so testify under oath if called upon to do so.

2.      My name is Dr. Eva Waineo. I am currently an Assistant Professor at Wayne State University School of Medicine. I have been a member of the School of Medicine's Promotions Committee since 2017 and was a member in 2019 when then-second-year medical student Anthony Eid came before the Promotions Committee.

3.      As a faculty member and member of the Promotions Committee, I am well aware of the professionalism standards of the School's curriculum. As set forth in the School's Handbook, medical students are considered physicians in training and must demonstrate that they are capable of becoming safe and effective physicians. To do so, students must display good judgment and a sense of responsibility and morality, among other traits. In particular, they must adhere to the School's professionalism standards, which are: Professional Responsibility, Competence and Self-Improvement, Respect for Others and Professional Relationships, Honesty and Academic Integrity, Personal Responsibility, and Social Responsibility.

4. I attended Mr. Eid's Promotions Committee hearing on February 27, 2019, as a voting member of the committee. Five other voting members were present. The hearing was scheduled to begin at 8:00 a.m. but was delayed approximately 20 to 30 minutes because of inclement weather.

5. At the beginning of the hearing, Mr. Eid was introduced to the members of the committee and given an opportunity to make a statement. Mr. Eid took full advantage of the opportunity and was allowed to make a statement, including reading prepared remarks, without interruption. During his remarks, I observed Mr. Eid's focus was on how the events posed difficulty for him. He did not focus in much depth on how another person may be affected, or focus on what he had learned and how he may use that knowledge in his future professional career as a physician. Noting the absence of this content – responsibility, professionalism, learning and application of learning in future work as a physician – Mr. Eid was asked questions to provide him with the opportunity to expand on these areas, but his answers to questions were brief, and circled back to negative effects on him.

6. After Mr. Eid finished his remarks, members of the committee asked questions of Mr. Eid. The questions were geared toward gaining insight into whether Mr. Eid understood the professionalism concerns raised by his conduct—namely, the troubling false and misleading texts that he admitted to sending to Roe—and its bearing on his fitness to be a medical doctor. In response, Mr. Eid provided evasive

answers that attempted to shift the blame for his professionalism failures to others. For example, in his responses he focused on Roe's actions instead of his own, describing how he was negatively affected. These explanations were longer, and when they included any information about his own actions, they lacked specifics. When asked about what effect his own actions may have had, he gave short responses that did not show genuine remorse or reflection. His tone and brevity during these responses were concerning and gave the impression that he was providing a brief apology simply because it was expected of him.

7. Mr. Eid's answers did not show a genuine appreciation for the serious professionalism concerns raised by his conduct. Whereas in his prepared remarks and written statements, Mr. Eid purported to acknowledge the grave professionalism issues surrounding his conduct, when questioned by committee members, Mr. Eid's contemporaneous responses revealed a deep-seated skepticism that his conduct had any bearing on his fitness to be a doctor. As noted in the minutes of the committee hearing, "At no point during the enquiry did [Eid] admit to any wrongdoing on his part[,] which was extremely concerning to the committee."

8. After a lengthy question-and-answer session, Mr. Eid left the room so that the committee members could deliberate in private.

9. During deliberations, the committee members did not discuss the young woman whose complaint brought Mr. Eid to the attention of the medical school

3

("Jane Roe").[1] Nor did committee members discuss whether Mr. Eid or Ms. Roe was telling the truth about various facets of the underlying conduct that brought Eid before the Professionalism Committee. That was irrelevant to the Promotions Committee's charge, which was to evaluate Mr. Eid's conduct and demeanor to determine whether his conduct fell below the standards of professionalism and whether he was capable of genuine self-improvement to consistently adhere to those high standards in the future.

10. As reflected in Mr. Eid's written statements and in his oral remarks to the committee, Mr. Eid admitted to repeatedly lying and misrepresenting facts in his communications to Ms. Roe. Dishonesty and deceitful conduct—especially when coupled with appeals to authority like Apple and law enforcement in an effort to pressure a member of the public to disclose private information—raise serious professionalism concerns.

11. Equally important, however, is whether the student has self-awareness and the capacity for self-improvement. Given the inconsistencies in his written statements between his purported acknowledgement of wrongdoing and his assertions that it did not bear on his fitness to be a doctor, members of the committee sought to learn whether Mr. Eid *sincerely* understood the severity of character

---

[1] I understand that the parties have referred to his person as "Jane Roe" throughout the litigation. I follow that designation in this declaration.

4

deficiency and whether he had the capacity for self-improvement. Mr. Eid's conduct before the committee established without question that he lacked the capacity for the kind of fundamental change necessary to avoid similar professionalism lapses in the future.

12.  After careful and deliberate deliberation with my fellow committee members, I voted to dismiss Mr. Eid from the School because Mr. Eid's admitted conduct of sending false and misleading texts to a member of the public to gain their private information failed to live up to the School's high professionalism standards, including the expectation of honesty and integrity and respect for others. Based on my observation of Mr. Eid's demeanor and the evasive, combative nature of his responses, I determined that Mr. Eid's purported claims of contrition in writing and before the committee were completely insincere, said only to placate members of the committee—a troubling confirmation that Mr. Eid did not have the capacity for self-awareness, self-improvement, and personal responsibility.

13.  As with every dismissal decision, the decision to vote in favor of dismissing Mr. Eid from medical school was very difficult, but it was necessary. The behavior and attitude Mr. Eid displayed during his Promotions Committee hearing showed that although he fully understood the severity of his situation, he lacked an understanding of the importance of professionalism in the medical profession, did not demonstrate insight into the effect of his behavior on others, or remorse for

5

actions he described. I concluded that Mr. Eid had a seriously flawed character in terms of his ability to conform his conduct to the standards of professional conduct expected of doctors and medical students. Simply put, in my expert, considered judgment, Mr. Eid was unfit to be a medical doctor.

14. The rest of the voting members also voted in favor of dismissal. The meeting ended at 10:35 a.m., over 30 minutes longer than the usual meeting.

15. The Promotions Committee decision was not a disciplinary decision, but an academic decision based on each individual committee member's subjective evaluation of Mr. Eid's fitness to be a medical doctor as judged by his adherence to, and appreciation for, the School's academic professionalism standards.

16. Mr. Eid's gender played no role in my decision to dismiss him from medical school. My decision was not based on whether I believed Ms. Roe as opposed to Mr. Eid. Ms. Roe did not appear before the Promotions Committee, Mr. Eid did. I therefore had no opportunity or reason to weigh the credibility of Ms. Roe against Mr. Eid. If there were any disagreements between them, they were immaterial to my decision, which was based solely on Mr. Eid's conduct, including his oral and written statements and his presentation before the committee.

17. At the time of Mr. Eid's hearing, I had no knowledge of any investigation of Wayne State University or the School of Medicine by the U.S. Department of Education's Office of Civil Rights. I had no knowledge of the U.S.

Department of Education's Office of Civil Rights' 2011 "Dear Colleague" Letter to colleges and universities regarding Title IX requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Eva Waineo, M.D.

Executed on January 28, 2022