UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

     Plaintiff,

v.

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY
SCHOOL OF MEDICINE,
NIKOLINA CAMAJ, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

     Defendants.

Case No: 20-cv-11718

Hon. Gershwin A. Drain
Mag. Judge David R. Grand

_____/

Mark C. Rossman (P63034)
Elizabeth M. Vincent (P76446)
ROSSMAN, P.C.
Attorneys for Plaintiff
2145 Crooks Road, Suite 220
Troy, MI  48084
(248) 385-5481
mark@rossmanpc.com
liz@rossmanpc.com

J. Robert Flores
Attorney for Plaintiff
Seeking EDMI Admission
10410Hampton Road
Fairfax Station, VA  22039
(703) 609-8731
rfloresesq@verizon.net

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
By: Elizabeth Hardy (P37426)
     David A. Porter (P76785)
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
dporter@khvpf.com

_____/

**Defendants' Motion to Exclude Plaintiff's Expert Report and Testimony**

Defendants Wayne State University, Wayne State University School of Medicine, Nikolina Camaj, Margit Chadwell, Matt Jackson, Richard S. Baker, and R. Darin Ellis, by their attorneys, move to exclude Plaintiff's expert report and testimony. In support of their motion, Defendants rely on their accompanying brief and the attached exhibits and declarations

On January 26, 2022, Defendants' counsel sought concurrence in this motion from Plaintiff's counsel, explaining the nature of the motion and its legal basis. Plaintiff's counsel did not concur, necessitating this motion.

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By:   _/s/ Elizabeth Hardy_
    Elizabeth Hardy (P37426)
    David A. Porter (P76785)
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
Dated: January 31, 2022       dporter@khvpf.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

     Plaintiff,

v.

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY
SCHOOL OF MEDICINE,
NIKOLINA CAMAJ, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

     Defendants.

Case No: 20-cv-11718

Hon. Gershwin A. Drain
Mag. Judge David R. Grand

_____/

Mark C. Rossman (P63034)
Elizabeth M. Vincent (P76446)
ROSSMAN, P.C.
Attorneys for Plaintiff
2145 Crooks Road, Suite 220
Troy, MI  48084
(248) 385-5481
mark@rossmanpc.com
liz@rossmanpc.com

J. Robert Flores
Attorney for Plaintiff
Seeking EDMI Admission
10410Hampton Road
Fairfax Station, VA  22039
(703) 609-8731
rfloresesq@verizon.net

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
By: Elizabeth Hardy (P37426)
    David A. Porter (P76785)
Attorneys for Defendants
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
dporter@khvpf.com

_____/

**Brief in Support of Defendants' Motion to Exclude Plaintiff's Expert Report and
Testimony**

# Table of Contents

Table of Contents ................................................................................. i

Index of Authorities ............................................................................. ii

Statement of Issues Presented ............................................................ iv

Controlling Authority ........................................................................... v

Introduction .......................................................................................... 1

Factual Background .............................................................................. 2

Legal Standard ..................................................................................... 3

Argument .............................................................................................. 4

I.      Dr. Finkelman's expert opinion is irrelevant because it reaches a quintessential legal conclusion. ................................... 4

II.     Dr. Finkelman is unqualified to opine on procedural due process. .................................................................................... 7

III.    Dr. Finkelman's opinion is not based on a reliable method nor was it reliably applied in this case. ................................... 11

Conclusion ......................................................................................... 14

# Index of Authorities

## Cases

*Am. Stove Co. v. Cleveland Foundry Co.*,
  158 F. 978 (6th Cir. 1908) ..................................................................................10

*Bd. of Curators of Univ. of Missouri v. Horowitz*,
  435 U.S. 78 (1978) ...........................................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................ 4, 5, 7

*Doe v. Miami Univ.*,
  882 F.3d 579 (6th Cir. 2018) ..........................................................................9

*Everlight Elecs. Co. v. Nichia Corp.*,
  No. 12-cv-11758, 2014 WL 4707053 (E.D. Mich. Sept. 22, 2014)......................8

*Green v. Haskell County*,
  No. 05-cv-406, ECF No. 78 (E.D. Okla. April 12, 2016) ....................................10

*Hyland v. HomeServices of Am., Inc.*,
  771 F.3d 310 (6th Cir. 2014) ..........................................................................6

*Keyes v. Ocwen Loan Servicing, LLC*,
  335 F. Supp. 3d 951 (E.D. Mich. 2018) ...........................................................6

*Killion v. KeHE Distributors, LLC*,
  761 F.3d 574 (6th Cir. 2014) ..........................................................................6

*Kumho Tire Co., Ltd v. Carmichael*,
  526 U.S. 137 (1999) ....................................................................................4, 12

*Leppek v. Ford Motor Co.*,
  No. 18-cv-13801, 2021 WL 927374 (E.D. Mich. Mar. 11, 2021) ......................3

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .........................................................................................9

*United States v. Caputo*,
  517 F.3d 935 (7th Cir. 2008) ...........................................................................5

*United States v. Gissantaner*,
   990 F.3d 457 (6th Cir. 2021) ....................................................................7

*United States v. Zipkin*,
   729 F.2d 384 (6th Cir. 1984) ...................................................................5

*Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*,
   68 F.R.D. 397 (E.D. Va. 1975)...............................................................10

**Rules**

Fed. R. Evid. 702 ............................................................................... passim

## Statement of Issues Presented

I.    Should this Court exclude the expert opinion of Plaintiff's due process expert as irrelevant, unqualified, and unreliable?

## Controlling Authority

Fed. R. Evid. 702

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)

*Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999)

*Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951 (E.D. Mich. 2018)

# Introduction

Plaintiff Anthony Eid has named Dr. Paul Finkelman as a "due process" expert, with the intention of relying on his opinion in opposition to Defendants' motion for summary judgment.

Dr. Finkelman's expert opinion—"that the university has denied Mr. Eid a full plethora range of due process protections"—is inadmissible under Rule 702. It purports to offer a legal conclusion on the question whether Eid was denied procedural due process—an invasion of this Court's role to decide questions of law. Dr. Finkelman is also deeply unqualified. He has no experience in procedural due process, let alone in the higher education context, and his deposition testimony revealed a troubling lack of knowledge on the subject. Finally, his opinion is not reliable in any sense as Dr. Finkelman had no apparent methodology and has failed to review critical information because he was short on time.

For these reasons, Defendants ask this Court to find that Dr. Finkelman's expert opinion as expressed in his report and deposition testimony is inadmissible and to preclude Plaintiff's reliance on it in opposition to summary judgment and, if necessary, later at trial.

## Factual Background

Dr. Paul Finkelman is a "professional historian and legal scholar," serving as the Chancellor and Distinguished Professor of History at Gratz College, a small online college. (Ex. 1, Finkelman Report, ¶¶ 1, 13.) He holds no law degree. (*Id.* ¶ 2.)

Dr. Finkelman is serving as a "due process" expert for Eid and has issued a 50-page expert report in support of Eids's claim that he was denied due process. (*See* Pltf's Expert Witness List, ECF No.35, PageID.728; Ex. 3, Pltf's Resp to Second Interrog., pp. 7–8.) The Report begins by briefly sketching the origins of due process, as recounted in another scholar's work. (Ex. 1, Finkelman Report, ¶¶ 14–30, citing to Levy, *Origins of the Fifth Amendment: the Right Against Self-Incrimination* (New York: Oxford Univ. Press 1968).) Dr. Finkelman claims that the "notion of due process" that emerged from this legal tradition encompassed a host of rights codified in the Bill of Rights that were later gradually incorporated against the states through the 14th Amendment's Due Process Clause. (*Id.*) Summarizing the result, Dr. Finkelman writes, "[A] central element of "due process" in the United States has been based on the idea that a government interrogation must be fair, and those being investigated have a right to know what the accusations and charges against them [are], to face (confront) their accusers, and have a right to counsel." (*Id.*, ¶ 24.)

Based on this understanding of due process, Dr. Finkelman opines that Eid was denied due process because the process that led to his dismissal from medical school lacked the procedural safeguards codified in the Fourth, Fifth, Sixth, and Eighth Amendments.  (*Id.*, ¶ 31-86; *see also* Ex. 2, Finkelman Dep., pp. 94–95 ("I use due process in a very broad range to include essentially the Fifth through the Eighth Amendments and possibly even the Fourth Amendment because a search could violate due process as well.").) To drive the point home, Dr. Finkelman concludes his Report with an extended analogy to the Star Chamber and other despotic legal regimes (Ex. 1, Finkelman Report, ¶¶ 87–106.) It is unnecessary to detail every facet of Dr. Finkelman's opinion as set forth in his Report because, as discussed below, it is not the proper subject of expert testimony and, in any event, he is not qualified to give it and, even if he were, the opinion he reached in this case is not reliable.

## Legal Standard

Before Eid can offer Dr. Finkelman's report in support of his due process claim, either at the summary-judgment stage or at trial, he must establish that his expert opinion is admissible under the Federal Rules of Evidence. *See, e.g.*, *Leppek v. Ford Motor Co.*, No. 18-cv-13801, 2021 WL 927374, at *1 (E.D. Mich. Mar. 11, 2021) (adopting report and recommendation to preclude the plaintiff's reliance on expert report for purpose of summary judgment). Those rules assign to this Court

the role of gatekeeper, weeding out irrelevant or unreliable testimony offered by unqualified experts. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 141 (1999). Rule 702 codifies this Court's gatekeeping role, and it requires the party offering the expert witness to establish, and this Court to find, that the expert opinion:

1. Is offered by a qualified witness, *i.e.*, someone who has the "knowledge, skill, experience, training, or education" to provide an expert opinion;

2. Is relevant, *i.e.*, is "help[ful] the trier of fact to understand the evidence or to determine a fact in issue," and

3. Is reliable, *i.e.*, is "based on sufficient facts or data" and "the product of reliable principles and methods" that are "reliably applied . . . to the facts of the case."

Fed. R. Evid. 702.

Dr. Finkelman fails all three requirements.

## Argument

### I.    Dr. Finkelman's expert opinion is irrelevant because it reaches a quintessential legal conclusion.

The inquiry into the admissibility of Dr. Finkelman's testimony begins and ends with its relevancy. Relevancy in this context is determined by whether an expert's opinion "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony purporting to explain the law is, by necessity, not helpful. "The only legal expert in a federal courtroom is the

judge." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008). Thus, when an expert's opinion offers legal conclusions, such testimony "is excluded because the trial judge does not need the judgment of witnesses." *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984). The Court's "special legal knowledge" renders such evidence superfluous. *Id*.

There's no question that Dr. Finkelman's entire expert opinion is a legal conclusion. His Report purports to "express [an] opinion on the history and meaning of 'Due Process' in the Fourteenth Amendment (and collaterally in the Fifth Amendment) as it relates to Mr. Eid's case."[1] (Ex. 1, Finkelman Report, ¶ 12.) Asked at his deposition what opinions he reached in this case, Dr. Finkelman said, "my summary opinion is that the university has denied Mr. Eid a full plethora range of due process protections." (Ex. 2, Finkelman Dep., pp. 9-10.)

---

[1] Almost immediately after this, Dr. Finkelman acknowledges that it "is not [his] place, as an expert, to determine or even suggest how the court should decide this case," stating that "his goal is to illuminate the constitutional history surrounding the case." (Ex. 1, Finkelman Report, ¶ 13.) Ignoring for the moment that the remainder of his report proceeds to opine on whether Eid was denied due process, if Dr. Finkelman's only goal is to "illuminate the constitutional history," then his opinion is irrelevant because it will not assist the trier of fact (or this Court at the summary judgment stage) in resolving whether Defendants denied Eid procedural due process under the legal framework established by Supreme Court precedent. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

Furthermore, an expert makes a legal conclusion when "he defines the governing legal standard or applies the standard to the facts of the case," *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 959 (E.D. Mich. 2018) (Drain, J.), and that's precisely what Dr. Finkelman has done here. According to his Report, Dr. Finkelman reached his conclusions by "consider[ing] the university's own procedures against the requirements of the law that [he is] familiar with as a constitutional scholar, professor, and college president." (Ex. 1, Finkelman Report, ¶ 12.) Asked later whether he reached his opinion by "tak[ing]. . . Wayne State's procedures as applied to Mr. Eid in this case and apply[ing] them to the law as [he] understand[s] it as a constitutional scholar," Dr. Finkelman replied, "And through history of due process, yes." (Ex. 2, Finkelman Dep., p. 104.)

By his own admissions, then, Dr. Finkelman's expert opinion is a quintessential legal conclusion. For that reason alone, this Court should strike his Report and exclude it for purposes of summary judgment. *See Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 593 (6th Cir. 2014) (affirming exclusion of expert whose opinion on meaning and application of legal term was an "impermissible legal conclusion"); *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) ("[A] witness may not testify to a legal conclusion.").

## II.    Dr. Finkelman is unqualified to opine on procedural due process.

Even if an expert could opine on the meaning of due process as applied in

Eid's case, Dr. Finkelman is not qualified to do so. His resume and deposition

testimony reveal that he has no "specialized knowledge, skill, experience, training,

or education" that qualifies him to offer an opinion on the due process issues in this

case—i.e., procedural due process in the high-education context. Fed. R. Evid. 702.[2]

Dr. Finkelman is a "professional historian and legal scholar." (Ex. 1,

Finkelman Report, ¶ 13.) He has never been offered, let alone qualified, as an expert

in procedural due process. (Ex. 2, Finkelman Dep., p. 256.)[3] Dr. Finkelman is not an

attorney or doctor and has not been trained or educated in those professions. (*Id.* at

63.) He has never taught at a medical school. (*Id.* at 65.) He has never taught a class

on procedural due process or published an article on the topic.[4]  (*Id.* at 65, 72–73.)

---

[2] Although Eid's complaint potentially raises a substantive due process claim, Dr. Finkelman's deposition testimony made clear he did not reach a conclusion on that issue. (Ex. 2, Finkelman Dep., pp. 116–17; *see also* Ex. 1, Finkelman Report., ¶ 97.)

[3] Dr. Finkelman touts his expert witness experience in several cases, but none involved a *Daubert* challenge or other qualification inquiry. (Ex. 2, Finkelman Dep., pp. 85–87, 256.)  The one time he was challenged under *Daubert*, he was excluded, as detailed below.

[4] What articles he has published are not peer-reviewed. Dr. Finkelman seemed to think otherwise because law students review his work before publication. (Ex. 2, Finkelman Dep., pp. 74–75.) *But see United States v. Gissantaner*, 990 F.3d 457, 464 (6th Cir. 2021) ("Peer review is not student review. . . . No offense to former, current, and future members of law journals everywhere: But it is one thing to convince lawyers in training to publish a piece; it is quite another to convince peers in a professional community to publish a piece.").

Nor does he have any experience as a voting member of a professionalism committee or similar body. (*Id*. at 71.)

Asked if he considers himself an expert on procedural due process, Dr. Finkelman replied, "To the extent that due process is included in the history of the Fifth and Fourteenth Amendment" and "is part of the general constitutional history of the United States and the Supreme Court decisions," "to that extent I am an expert of due process." (*Id*. at 75-76.) That kind of mile-high expertise does not qualify Dr. Finkelman to be an expert on the narrow subject of procedural due process in the higher education setting. *See Everlight Elecs. Co. v. Nichia Corp.*, No. 12-cv-11758, 2014 WL 4707053, at *9 (E.D. Mich. Sept. 22, 2014) (excluding proposed expert because he was not qualified in subspecialty of field) (citing cases).

The rest of his deposition testimony made that abundantly clear. Asked to state the standard for assessing whether the state has denied an individual of procedural due process, Dr. Finkelman repeatedly invoked the standard for incorporating the Bill of Rights provisions against the states through the 14th Amendment. (*See* Ex. 2, Finkelman Dep., p. 139.) That doctrine is analytically distinct from assessing whether a state has deprived an individual of their procedural due process rights. (*See id*. at 84 (agreeing with that proposition); *see also* Ex. 4, Con Law Treatise Excerpt.) When confronted with that fact, Dr. Finkelman's answer betrayed a fundamental lack of understanding of procedural due process: "The standard is to

look at the facts of the case and to look at the traditions and precedent . . . ." (*Id*. at 140.)[5]

Upon further questioning, it became clear that Dr. Finkelman's understanding of procedural due process directly conflicted with binding precedent. Asked, "Is it your expert opinion that a university violates due process when it fails to follow its own rules?" Dr. Finkelman answered, "I think it clearly does, yes. … And no, I can't cite you a specific case." (*Id*. at 168.)[6] Asked if the same procedural protections apply to the same extent in the "academic" dismissal setting as they do in the "disciplinary" setting, Dr. Finkelman said "yes," adding that academic dismissals require the right to a hearing, to confrontation, to cross-examination, to an attorney, to an appeal, "[a]nd probably other things that I haven't thought about" (*Id*. at 126.)[7]

---

[5] The correct answer, at least at the most generic level, comes from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest . . . ; second, the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest[.]").

[6] The correct answer was "no." *See Doe v. Miami Univ*., 882 F.3d 579, 603 (6th Cir. 2018) ("[A] mere failure by the University to follow its own internal guidelines does not give rise to a procedural-due-process violation.").

[7] Again, the correct answer was "no." *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 & n.2 (1978) (holding that the 14th Amendment requires "less stringent procedural requirements in the case of an academic dismissal" and rejecting the argument that "representation by counsel, confrontation, and cross-examination of witnesses" are required).

Aside from his fundamental lack of expertise on the subject, the tenor of Dr. Finkelman's report indicates that he is a hired partisan offering legal advocacy. *See Am. Stove Co. v. Cleveland Foundry Co.*, 158 F. 978, 984 (6th Cir. 1908) ("It is not the province of witnesses to advocate the cause of the party who calls him[.]"). For example, he draws analogies to the "the jurisprudence of Salem Massachusetts in 1691," George Orwell's *1984*, and the comedy movie *Animal House*. (Ex. 1, Finkelman Report, ¶¶ 57, 80–81, 92.) And his report is littered with hyperbole. (*See e.g., id.*, ¶¶ 66, 75–76, 80-81, 85, 87–106.) He does not offer the type of serious analysis befitting an expert witness. *Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 406 (E.D. Va. 1975) ("In order to be an expert one must be in a position to testify as an expert and not as a partisan.").

This is not the first time Dr. Finkelman has offered legal advocacy under the guise of "expert" testimony. Recently, the U.S. District Court for the Eastern District of Oklahoma, exercising the same gatekeeping role this Court is exercising here, excluded Dr. Finkelman as an expert witness, in part, because his report did not "represent[] an objective balance of views, but rather the zealous views of an advocate" and thus "would not be helpful and is not properly the subject of expert testimony." (*Green v. Haskell County*, No. 05-cv-406, ECF No. 78 (E.D. Okla. April 12, 2016) (attached as Ex. 5.)

In short, Dr. Finkelman's resume, the content and tenor of his Report, and the considered judgment of another federal judge all support the same conclusion: he is not qualified to be an expert and, on the topic of procedural due process, he is simply out of his depth.

### III.    Dr. Finkelman's opinion is not based on a reliable method nor was it reliably applied in this case.

Finally, even if Dr. Finkelman's opinion were relevant and he were qualified to give it, his approach in reaching it was wholly unreliable here.

Reliability requires, first and foremost, that the opinion be "based on sufficient facts or data." Fed. R. Evid. 702(b). Dr. Finkelman's opinion is not based on sufficient facts. He claimed to have received all the documents exchanged between the parties in discovery as well as the deposition transcripts, but he only reviewed a fraction of the documents due to time constraints. (Ex. 2, Finkelman Dep., p. 156 ("[I]f I had been contacted a month earlier than I had, there would have been -- I probably would have looked at everything."). Most troubling, he admitted that he did not review the School of Medicine Handbook, the Professionalism Committee Bylaws, or the Promotions Committee Bylaws, despite knowing from the depositions that Eid's case was a medical school professionalism proceeding. (*Id*. at 233–34 (explaining "because I ha[d] something of a lack of time").)

Dr. Finkelman's opinion was also not the product of a "reliable method[]." Fed. R. Evid. 702(c). Asked to explain his methodology, Dr. Finkelman said, "I read

all these [depositions] and then . . . I read what they said about the due process – their process. I read their rules and then I proceeded to write my report." (*Id*. at 95.) In other words, he reads and then he writes. That's not a "reliable" method under *Kumho Tire*. It has no control standards and cannot be tested. See *Kumho Tire*, 526 U.S. at 149. In fact, Dr. Finkelman could not explain how he rules out alternative explanations in reaching conclusions, a hallmark of reliability. (Ex. 2, Finkelman Dep., p. 99 ("I don't think I can give you an answer to that.").)

Finally, to the extent his method could be considered reliable, it was not reliably applied here. *See* Fed. R. Evid. 702(d). For the facts he did review, it is evident he focused only on Eid-friendly inferences and overlooked undisputed evidence to the contrary elsewhere in the record—something that was antithetical to the approach of an historian. (*See* Ex. 2, Finkelman Dep., p. 95.)

To cite just one example, in his report Dr. Finkelman opined that Camaj denied Eid due process, in part, because Eid "offered to write a letter of apology" but "Ms. Camaj didn't want that to happen." (Ex. 1, Finkelman Report, ¶¶ 60–61 (citing Eid's deposition and opining that this "create[s] two due process issues").) But Camaj said the exact opposite during her deposition. (*See* Ex. 2, Finkelman Dep., p. 193.) Confronted with this fact, Dr. Finkelman responded, "[T]hank you for correcting me. I am wrong. Okay? I made a mistake. I missed it. I missed a sentence that Ms. Camaj said." (*Id*.)

But even as he admitted his error, Dr. Finkelman dug in, stating, "I will say,
however, that it still strikes me as odd that she did not pursue the apology letter the
way she pursued the statement." (*Id.*) *That* was wrong, too. After being shown an
email in which Camaj told Eid she would notify the School that Eid wanted to write
an apology, Dr. Finkelman gave an explanation that casts doubt on the reliability of
his entire report:

> And so I can only say that in this piece of my expert report I overlooked
> evidence and I am incorrect. That happens. It happens when you're
> writing something in a hurry and you haven't had a chance to fact check
> every -- you know, go back and do multiple checkings of everything.

(*Id.* at 194.) This was no isolated mistake. Later, he admitted that he did not "do any
research to determine whether or not there are special due process principles that
apply to professionalism judgments made by medical school administrators." (*Id.* at
261–62.)[8] Nor did he "search out any other authorities that would contradict the
position that Mr. Eid has taken in this case[.]" (*Id.*) Asked why he didn't even try,
Dr. Finkelman said: "I did not have the time." (*Id.*) By Dr. Finkelman's own account,
time constraints prevented him from reliably reaching conclusions in this case.

---

[8] He failed to do so despite knowing that Eid's case arose in the medical school
setting, that the School "considered [Eid's case] to be a professionalism issue, and
that the School "ha[d] a separate procedure involving the process of professionalism
issues." (*Id.* at 261–62.)

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court find that Dr. Finkelman's expert opinion as expressed in his report and deposition testimony is inadmissible and preclude Plaintiff's reliance on it in opposition to summary judgment and, if necessary, later at trial.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.

By: /s/ *Elizabeth Hardy*
    Elizabeth Hardy (P37426)
    David Porter (P76785)
    Attorneys for Defendant
    280 N. Old Woodward Ave., Suite 400
    Birmingham, MI  48009
    (248) 645-0000
    ehardy@khvpf.com
Dated:  January 31, 2022      dporter@khvpf.com
437386

14

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ *Elizabeth Hardy*
Elizabeth Hardy
Kienbaum Hardy Viviano
  Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
E-mail: ehardy@khvpf.com
(P37426)
