EXHIBIT 4

# CONSTITUTIONAL LAW

Seventh Edition

John E. Nowak
Ronald D. Rotunda

*Hornbook Series*

THOMSON
★
WEST

# CONSTITUTIONAL LAW

## SEVENTH EDITION

By

**John E. Nowak**
*David C. Baum Professor of Law Emeritus*
*University of Illinois*

**Ronald D. Rotunda**
*George Mason University Foundation Professor of Law*
*George Mason University School of Law*

**HORNBOOK SERIES®**

**THOMSON**
—★—
**WEST**

Mat #40117044

physically present in the state are protected by the clause because the Supreme Court has interpreted the provision to guarantee equal treatment under the law to all people who are subject to the law of a state.[8] Thus, anyone who is directly affected by a state law may challenge the law on the basis of the equal protection guarantee of the Fourteenth Amendment even though he is not physically present in the state at the time of the suit.

## § 10.6 Procedural Due Process Versus Substantive Review

### (a) Introduction—Overview

When the Court reviews a law to determine its procedural fairness, it reviews the system of decision-making to determine whether or not a government entity has taken an individual's life, liberty, or property without the fair procedure or "due process" required by the Fifth and Fourteenth Amendments.[1] This type of review is easily justified because it involves no more than a judicial assessment of a decision-making process that has determined that a specific individual should suffer some burden. It may involve the review of the general fairness of a procedure authorized by legislation or merely the review of the fairness of a decision in an individual case. In either instance, little theoretical complaint exists about a court's active role in reviewing the fairness of a governmental decision-making process as the judiciary seems uniquely suited for such a task.

**Procedural Review.** It is important to realize that procedural review is limited in scope. Procedural due process guarantees only that there is a fair decision-making process before the government takes some action directly impairing a person's life, liberty or property. This aspect of the due process clauses does not protect against the use of arbitrary rules of law which are the basis of those proceedings. It is only necessary that a fair decision-making process be used; the ultimate rule to be enforced need not be a fair or just one.

For example, if a state legislature enacted a law which imposed the death penalty upon any person who had been found guilty of double parking an automobile after a determination of guilt through trial by jury and appellate review, the law would clearly comport with the *procedural* restrictions of the due process clauses. The law might violate the Eighth Amendment, as applied to the states by the

---

receive some, but not all, of the civil liberties protections in the Constitution and its Amendments.

The implied equal protection guarantee of the Fifth Amendment due process clause might impose some restrictions on Congress' ability to exclude lawfully resident aliens from statutory benefits, although the Supreme Court has not given close scrutiny to citizenship classifications in federal statutes. See § 14.11–14.13 regarding judicial review of classifications based on alienage. Classifications that discriminate against corporations are normally subject only to a rationality test under the due process clause of the Fifth Amendment and the due process and equal protection clauses of the Fourteenth Amendment. See § 14.3 regarding standards of review under the equal protection guarantee.

8. See Kentucky Finance Corp. v. Paramount Auto Exchange, 262 U.S. 544, 43 S.Ct. 636, 67 L.Ed. 1112 (1923).

**§ 10.6**

1. "No person shall be ... deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. 5.

"[N]or shall any State deprive any person of life, liberty, or property, without due process of Law...." U.S. Const. amend. 14, § 1.

See generally; Gladstone v. Bartlesville Independent School Dist. No. 30, 66 P.3d 442, 2003 OK 30 (Okla.2003, citing an earlier edition of this Treatise); Jackson, J., citing Treatise in Harksen v. Garratt, 29 F.Supp.2d 272, 279, 280 (E.D.Va.1998); Jackson, J. citing Treatise in Hall v. United States, 30 F.Supp.2d 883, 897 (E.D.Va.1998); Gillman, J. citing Treatise in U.S. v. Brandon, 158 F.3d 947, 956 (6th Cir.1998); Boudin, J., citing Treatise in Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir.1999); Trimble, J., citing this section of the Treatise in Merit v. Lynn, 848 F.Supp. 1266, 1270 (W.D.La.1994) and Tran v. Caplinger, 847 F.Supp. 469, 476 (W.D.La.1993); Slater, J., citing Treatise in, People v. Gloria Marion, 275 Ill.App.3d 494, 212 Ill.Dec. 117, 118, 656 N.E.2d 440, 441 (3 Dist. 1995); Madsen, J., (dissenting) citing Treatise, in State v. Manussier, 129 Wn.2d 652, 921 P.2d 473, 494 (1996), certiorari denied 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). Thornburg, J., citing Treatise, in Ryder v. Freeman, 918 F.Supp. 157, 160 (W.D.N.C.1996), appeal dismissed and cause remanded 112 F.3d 510 (4th Cir.1996); H. Franklin Waters, District Judge, citing Treatise in Holt Bonding Co., Inc. v. Nichols, 988 F.Supp. 1232 (W.D.Ark.1997); Criswell, J., citing Treatise in People in Interest of E.I.C., 958 P.2d 511 (Colo.Ct.App.1998).

fourteenth, in that it constituted cruel and unusual punishment. Indeed the law might also violate the substantive guarantee of the due process clause of the Fourteenth Amendment insofar as it was an irrational and arbitrary abuse of the government's power to protect against traffic hazards. However, so long as the decision-making process by which the burden of the death penalty was handed out was a fair one the law could not be stricken on the basis of "procedural" due process.

**Substantive Review.** This brings us to the ability of the judiciary to review the substance of legislation. By "substantive review" we mean the judicial determination of the compatibility of the substance of a law or governmental action with the Constitution. The Court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process by which the government applies the rule to an individual. Every form of review other than that involving procedural due process is a form of substantive review. For example, if the Court were to strike a law restricting the freedom of the press because it violated the First Amendment, the case would involve a form of substantive review by the Court. The Court would have determined that the substance or rule of the legislation was incompatible with the language of the Amendment.

Substantive review under specific Amendments or provisions of the Constitution has not met with intense intellectual criticism. Because the Constitution gives an indication through specific language that certain types of legislation or executive action are beyond the power of government, the ability of the judiciary to overrule state or federal law on the basis of specific textual provisions has not been challenged widely in the past century. The Court's ability to determine the constitutionality of state or federal laws or executive actions under the due process and equal protection clauses, however, is subject to much greater criticism.

The next chapter will examine the development of judicial control over state and federal legislation under the due process and equal protection clauses. The reader, however, should appreciate how the Court can overrule a piece of legislation because the Court disagrees with its substance under a portion of the Constitution which speaks only of a process (or procedure) being due an individual. The concept the Court employs to control the substance of legislation under the due process clause is that certain types of lawmaking go beyond any proper sphere of governmental activity. In short, the Court views the act as incompatible with our democratic system of government and individual liberty. The judicial premise for this position is that any life, liberty, or property limited by such a law is taken without due process because the Constitution never granted the government the ability to pass such a law.

If the Court assumes that the government does not possess the power to pass legislation establishing the maximum number of hours for workers then the Court can hold that any law which would limit those hours must have been passed by an unconstitutional process. The measure would be void under the due process clause because no piece of legislation could limit the ability of employers or employees to set the terms of employment in a manner compatible with the Constitution. The importance of such a ruling is that it eliminates entirely the ability of the state or federal government to deal with a given type of problem.

Because the other branches of government theoretically are responsive to the people, this particular form of substantive review constitutes a judicial rejection of a democratic society's attempt to deal with its social problems. Although the effect of a substantive due process decision is readily apparent, the basis on which a court justifiably can reach such a decision has been a source of continuing controversy.

The Supreme Court used the substantive due process test to control a wide variety of legislation during the period from 1885 to 1937. During this period a majority of the Justices concluded that interference with certain types of economic liberty was not a permissible end of government and that the Court

# Chapter 13

# PROCEDURAL DUE PROCESS—THE REQUIREMENT OF FAIR ADJUDICATIVE PROCEDURES

## § 13.1 Introduction

Both the Fifth and Fourteenth Amendments prohibit governmental actions which would deprive "any person of life, liberty or property without due process of law."[1] But due process has several quite distinct meanings.[2] As we have seen in Chapter Eleven, due process restricts the ways in which legislatures may limit individual freedom. This "substantive" due process may protect certain fundamental rights or void arbitrary limitations of individual freedom of action. Part of the substantive impact of the due process clause of the Fourteenth Amendment is the "incorporation" of certain guarantees in the Bill of Rights. Thus state legislatures cannot pass legislation which denies freedom of speech, for to do so would violate due process in that the liberty it protects includes the freedom of speech guaranteed by the First Amendment.

The due process clauses also have a procedural aspect in that they guarantee that each person shall be accorded a certain "process" if they are deprived of life, liberty, or property. When the power of the government is to be used against an individual, there is a right to a fair procedure to determine the basis for, and legality of, such action. But there is no general requirement that the government institute a procedure prior to taking acts which are unfavorable to some individuals. It is only when someone's "life, liberty or property" is to be impaired that the government owes him some type of process for the consideration of his interests. Today these concepts are being defined so as to exclude a variety of personal interests from their scope and protection even though earlier cases had recognized the phrase as virtually all-encompassing.

If life, liberty or property is at stake, the individual has a right to a fair procedure. The question then focuses on the nature of the "process" that is "due." In all instances the state must adhere to previously declared rules for adjudicating the claim or at least not deviate from them in a manner which is unfair to the individual against whom the action is to be taken. The government always has the obligation of providing a neutral decisionmaker—one who is not inherently biased against the

---

§ 13.1
1. "[N]or shall any person ... be deprived of life, liberty or property, without due process of law; U.S.Const. amend. V.

"[N]or shall any State deprive any person of life, liberty, or property without due process of law;" U.S.Const. amend. XIV.

2. See generally, Shattuck, The True Meaning of the Term "Liberty" in Those Clauses in the Federal and State Constitutions Which Protect "Life, Liberty and Property," 4 Harv.L.Rev. 365 (1891); Smolla, The Re-emergence of the Right–Privilege Distinction in Constitutional Law: The Price of Protesting Too Much, 35 Stanford L.Rev. 69 (1982). For citations to additional secondary authorities, see R. Rotunda & J. Nowak, Treatise on Constitutional Law: Substance and Procedure, Chapter 17 (3rd ed. 1999, with annual supplements).