UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

     Plaintiff,

v.                                    Case No: 20-cv-11718

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY           Hon. Gershwin A. Drain
SCHOOL OF MEDICINE,            Mag. Judge David R. Grand
NIKOLINA CAMAJ, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

     Defendants.

_____/

**Plaintiff's Brief in Opposition to Defendants' Motion to Exclude Plaintiff's Expert Report and Testimony**

## Table of Contents

Table of Contents …………………………………………………………….…i

Index of Authorities …………………………………………………………...ii

Statement of issues Presented …………………………………….………iv

Controlling Authority …………………………………………………………v

Introduction …………………………………………………………………...1

Legal Standard ………………………………………………………………..1

Argument ……………………………………………………………………..4

   I.   Dr. Finkelman's expert opinion will aid the jury in understanding the harms the Constitutional guarantee of due process is designed to protect against and is highly relevant…………………………………………………………..5

   II.   Dr. Finkelman is qualified to opine on the Constitutional guarantee of Due Process and the Harms the Fifth Amendment seeks to prevent in the Medical School context………………………………………………………….8

   III.   Dr. Finkelman's opinion is based on expert knowledge reliably applied in this case that will assist the trier of fact…………………………………….15

Conclusion………………………………………………………………...17

# Index of Authorities

*Andler v. Clear Channel Broad., Inc.,*
  670 F.3d 717, 729 (6ᵗʰ Cir. 2012)………………………………………….……….16

*Capitalplus Equity, LLC. v. Espinosa Group, Inc.,*
  No. 3:18-CV-10, 2022 S. Dist. LEXIS 1055, at *4
  (E.D. Tenn. January 4, 2022)…………………………………………..………..…..2,16

*Daniels v. Erie Insurance Group,*
  291 F.Supp. 3d 835, 840 (2017)…………………………………………….………2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579, 589 (1993)………………………………………………..………..2

*Doe v. Baum,* 903 F.3d 575 (6ᵗʰ Cir. 2018)………………………………………10

*Doe v. Miami University,*
  882 F.3d 579, (6ᵗʰ. Cir. 2018)…………………………………………………12

*Heflin v Stewart County*, 958 F.2d 709, 715 (6ᵗʰ Cir. 1992)………..…………3,4,15

*In re Methyl Tertiary butyl Ether Prods. Liab. Litig.*
  *v. Exxon Mobil Corp.,* 643 F.Supp. 2d 482,
  80 Fed. R. Evid. Serv.
  (CBC 72, 2009 U.S. Dist. LEXIS 62094 (S.D.N.Y. 2009)…………………..………7

*Mbawe v. Ferris State University*,
  *751 Fed.* Appx. 832, 841(6ᵗʰ Cir. 2018)
  (2018 U.S. Spp. LEXIS 31218,**22 (Nov. 5, 2018)…………………….………13

*McGowen v. Cooper Indus., Inc.,*
  863 F.2d 12, 1272 (6ᵗʰ Cir 1995)…………………………………………..8

*Murry's Lessee v. Hooken land & Iprovement Co.,*
  59 U.S. (18 How.) 272, 276 (1856)……………………………………….……5

*Torres v. County of Oakland,* 758 F.2d 147, 150 (6ᵗʰ Cir. 1985)…………..…..2,3,6

*United States v. Perkins,* 470 F.3d 150, 158
(4th Cir. 2006)……………………………………………………………..…..6

*United States v. Sheffey,* 57 F.3d 1419, 1425 (6th Cir. 1995)………………………2

## Rules

Fed. R. Evid. 702………………………………………………………...……………1

Fed. R. Evid. 704…………………………………………………..……………*passim*

## Statement of Issue Presented

I.    Should this Court permit expert testimony that will assist the finder of fact in this case?

## Controlling Authority

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579, 589 (1993)…………………………………………………..2

*Heflin v Stewart County*, 958 F.2d 709, 715 (6th Cir. 1992)………………3,4,15

*McGowen v. Cooper Indus., Inc.,*
 863 F.2d 12, 1272 (6th Cir 1995)…………………………………………8

*Murry's Lessee v. Hooken land & Iprovement Co.,*
  59 U.S. (18 How.) 272, 276 (1856)……………………………………...5

*Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir. 1985)………….2,3,6

**Plaintiff's Brief in Opposition
to Defendants' Motion to Exclude
Plaintiff's Expert Report and Testimony**

## 1. Introduction

On January 31, 2022, Defendants' filed their Motion to Exclude Plaintiff's Expert Report and Testimony. Plaintiff, Anthony Eid, submits this brief and the attached exhibits in support of his Motion in Opposition.  For the reasons set forth below, Plaintiff's expert meets the legal requirements permitting him to testify as an expert witness and any challenge to his testimony is best addressed through cross-examination.

## 2. Legal Standard

Rule 702 of the Federal Rules of Evidence permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise, if:

(a) the expert's … specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

In determining whether Plaintiff's expert meets this test, the Sixth Circuit has explained that the District Court is to perform "the gatekeeping function established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). And critically important to this task is the recognition that "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system." *Daniels v. Erie Insurance Group,* 291 F.Supp. 3d 835, 840 (2017). "Exclusion is the exception, not the rule." *Capitalplus Equity, LLC. v. Espinosa Group, Inc.,* No. 3:18-CV-10, 2022 S. Dist. LEXIS 1055, at \*4 (E.D. Tenn. January 4, 2022). Therefore, the question before this Honorable Court is whether Dr. Finkelman will testify in a manner that will "assist the trier of fact in understanding and resolving the factual issues involved in the case." *Daubert,* at 593.

Federal Rule of Evidence 704 addresses the admissibility of opinions on an ultimate issue. The *Rule* states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." FRE 704(a). "Rule 704 removes the general 'proscription against opinions on 'ultimate issues' and shifts the focus to whether the testimony is 'otherwise admissible." *United States v. Sheffey,* 57 F.3d 1419, 1425

(6th Cir. 1995)(quoting *Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir. 1985).

The *Torres* Court then announced the "test that should be applied in determining whether a question posed to a … witness calls for an impermissible legal conclusion: The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate. Thus, when a witness was asked whether certain conduct was "unlawful," the trial court properly excluded the testimony since "terms that demand an understanding of the nature and scope of the criminal law" may be properly excluded. *Id. at 151*.

For example, in *Heflin v Stewart County*, 958 F.2d 709, 715 (6th Cir. 1992), the Court held that where the expert witness "did not claim to be an expert on the legal requirements for recovery from jail officials for dereliction of duty," but his testimony included the opinion that the conduct of the jail officials constituted *deliberate indifference* to the needs of the prisoner, the use of term deliberate indifference was used in "the way an ordinary layman would [] describe such conduct—to state his opinion on the ultimate fact, not to state a legal conclusion. *Id.* at 715. This is exactly the situation with Dr. Finkelman. Just as with the expert in *Heflin,* Dr. Finkelman does not claim to be an expert on the legal requirements for

3

proving procedural due process, rather, his testimony "emphasizes the experts view of the seriousness of the Defendanats' failures. [And] given the generality of the test, will assist the trier of fact," and is not an abuse of discretion to admit such testimony. *Id.* at 715.

## Argument

Defendants contend that the Plaintiff's expert witness is unqualified to offer an opinion; that the opinion, if offered, would be irrelevant; and, that the opinion has been arrived at on the basis of unreliable methods and application. Plaintiff urges this court to recognize Defendants' arguments for what they really are, an attempt to remove the seminal issue in this case—was Plaintiff provided due process of law by Defendants, from the province of the jury and this Honorable Court.

Defendants' Motion for Summary Judgment frames this case as one that the Court is not competent to judge because the Defendants' were simply applying "accepted academic norms," that they alone are competent to decide *and* review. *Defendants' Motion for Summary Judgment*, ECF No. 43, at 22. Defendants fearing that this Court will properly reject their argument that they alone can judge their process, advance the alternative argument: that Plaintiff was provided with a sufficient process within the confines of academia, to wit: "he was given effective

notice and multiple informal hearing[s] in which he had a chance to give his version of the events and demonstrate to the School that he was fit to be a physician." *Id.* at 21 (fn.15). Therefore, based on what Defendants have disclosed as their defense strategy, expert testimony on the issue of due process is not, by definition, irrelevant.

## 1.    Dr. Finkelman's expert opinion will aid the jury in understanding the harms the Constitutional guarantee of due process is designed to protect against and is highly relevant.

Defendants' defense is predicated upon a claim that Defendants provided Plaintiff with the due process required by law. *Id.* at 21 (fn. 15). Plaintiff must prove, beyond a preponderance that Defendants failed to meet their federal and state constitutional obligations. In evaluating the facts underlying that claim and Plaintiff's burden, it will be necessary for the jury to consider whether the process to which Defendants subjected Plaintiff was legally sufficient to provide fundamental fairness, i.e., whether the Defendant's version of notice, opportunity for hearing, confrontation, cross-examination, discovery, basis for decision, and availability of counsel protected him from the harms that the Constitutional protection was designed to provide. For "[i]t is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave Congress free to make any process 'due process of law' by its mere will." *Murry's Lessee v. Hooken land &*

*Improvement Co.,* 59 U.S. (18 How.) 272, 276 (1856). Therefore, it must also be manifest that Defendants, a mere agency of a state, are not free to make any process 'due process of law' by its mere will. Accordingly, testimony on the harms the due process clause was intended to protect against will assist the jury in determining whether the process that Defendants cobbled together, and subjected Plaintiff protected the interests the Constitution demands.

Defendants argue that Dr. Finkelman's entire expert opinion is a legal conclusion. As stated above, such a claim is readily disproven. This Circuit has determined that "the best way to determine whether opinion testimony [is unhelpful because it merely states] legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *United States v. Perkins,* 470 F.3d 150, 158 (4th Cir. 2006)(quoting *Torres v. County of Oakland,* 785 F.2d 147, 151 (6th Cir. 1985). Such "testimony is not objectionable as containing a legal conclusion where the "average layman would understand those terms and ascribe to them essentially the same meaning intended"). *Id.* at 151.

In today's day and age, the terms relevant to due process, words and phrases like notice, opportunity to be heard, cross-examination, and discovery are no longer legal terms of art indecipherable to laymen that have substantially different meanings in court than they do in everyday speech. Indeed, today this cannot be

legitimately questioned. Widely reported televised Congressional hearings include cross-examination by committee counsel and committee members; wide availability to courtroom dramas where these terms are used have educated generations of laymen; extensive social media coverage of sensational trials; credit card agreements signed and agreed to by laymen include information about notice requirements before changing rates or significant terms; and school board and county commission hearings that have wide participation have normalized the concepts of granting citizens the right to be heard on issues of importance being decided by such entities *prior* to decisions being made.  "At its essence, Fed. R. Evid. 704 restricts how an expert may frame her opinions." *In re Methyl Tertiary butyl Ether Prods. Liab. Litig. v. Exxon Mobil Corp.,* 643 F.Supp. 2d 482, 80 Fed. R. Evid. Serv. (CBC 72, 2009 U.S. Dist. LEXIS 62094 (S.D.N.Y. 2009). Therefore, under this Circuit's test, there is little danger that Dr. Finkelman will be unable to articulate his opinions in a way that will not usurp the Court's province and striking his testimony on mere speculation is unwarranted. Indeed, even as conceded by Defendants, Dr. Finkelman understands his role, stating that it "is not [his] place, as an expert, to determine or even suggest how the court should decide this case." *Defendant's Motion to Exclude Plaintiff's Expert Report and Testimony*, at 5; *Finkelman Report* ECF No. 48-2 para. 13.

Under Rule 704, there is no hard and fast rule that precludes an opinion on an ultimate issue. Therefore, Defendant's contention that Dr. Finkelman's testimony and report be stricken because it touches on an ultimate issue or legal conclusion is simply wrong. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. The question remains, whether "expert witness testimony is helpful to the jury and, thus, admissible." *McGowen v. Cooper Indus., Inc.,* 863 F.2d 12, 1272 (6th Cir 1995). And McGowen established the test for whether such testimony is helpful to the jury. Stating that where the expert's testimony is based on specialized knowledge, such testimony is helpful. *Id.* at 1272. Plaintiff contends that it will be helpful to the jury to have a clear understanding of the baseline of due process that the Constitution guarantees and why the failure to provide it is a violation of law.

**2.   Dr. Finkelman is qualified to opine on the Constitutional guarantee of Due Process and the Harms the Fifth Amendment seeks to prevent in the Medical School context.**

Dr. Finkelman will be offered as an expert on the purpose of due process, its application within the medical school/university/college setting, and the impact a denial of due process has on an individual's ability to defend themselves from serious, career ending accusations. Dr. Finkelman will include in his testimony information to assist the jury in its determination of whether under the facts of this case, Defendants met their obligation.

Defendants attack on Dr. Finkelman's qualifications are internally inconsistent. First, Defendants complain that Dr. Finkelman should not testify because he is going to testify to a legal conclusion and is usurping the Court's prerogatives. However, they view as disqualifying that he did not reach a conclusion on an ultimate legal conclusion on substantive due process. *Defendant's Mtn. to Exclude*, at 7 (n.2). Again, Plaintiff is not offering its expert to decide for the jury whether Defendants violated Plaintiff's substantive or procedural due process rights. Instead, Dr. Finkelman will opine on the interests at stake and what interests the process Defendants concocted did or did not meet.

Defendants are no doubt particularly concerned that when Dr. Finkelman testifies on the due process protections of the Fifth Amendment, that jurors will clearly understand that the same harms that were inflicted by the secretive and idiosyncratic operation of the Star Chamber and were also present in the Defendants' judicial process. That is not a problem of Dr. Finkelman's making, but of Defendants. Thus, the jury will be aided in understanding the role of due process, what interests and rights are implicated by different aspects of the Defendants' judicial process, and the impact of missing procedural steps in the process. Such expert testimony is especially important in a case where the Defendants are trying to argue that by virtue of being a University and medical school they were not bound

by the same obligations demanded by the federal and state constitutions or that the denial of due process did not injure Plaintiff.

Dr. Finkelman is also qualified to offer an opinion comparing Defendants' conduct to sound practices in higher education. Dr. Finkelman's Report ("Report") states clearly that he "considered the university's own procedures in light of my forty plus years as a professor and constitutional scholar and my years as a college professor and college president," in reaching his opinions. *Report*, para. 12. Plaintiff contends that Defendants' conduct violated their own internal standards as set forth in their handbooks and other University and medical school literature. Dr. Finkelman's Report does not depend on an analysis of caselaw, because his report is not focused on "how the Court should decide this case." *Id.* at 13. Defendants pretend to miss the point regarding the purpose for Dr. Finkelman's testimony, but Plaintiff contends that they know that it is to explain where the Due Process Clause comes from, why it is important, and that Defendants knew the harm to a student that would be caused if they denied its protections, something Defendants' own documents make clear.[1]

---

[1] The Defendants' own rules governing inquiries into student misconduct all recognize that fair and impartial consideration is required—thus, Plaintiff was owed, but not given, due process and Plaintiff is entitled to put before the Jury expert testimony on the impact such a failure imposed on Plaintiff. *See* WSU Student Code of Conduct (""This Student Code of Conduct is designed to assure that students who are alleged to have engaged in unacceptable conduct receive fair and impartial consideration … .")(Attached as Exhibit A, at 1); WSU Interim Administrative Hearing Guidelines Student Code of Conduct (implementing the Sixth Circuit's Decision on Due Process in *Doe v. Baum,* 903 F.3d 575 (6th Cir. 2018), rehearing en banc denied, 2018 U.S. App. LEXIS

Defendants' arguments relating to Dr. Finkelman's  answers to questions about caselaw and lack of membership on a professionalism committee are simply distractions. Defendants once again attempt to argue that if Dr. Finkelman is not an expert on all aspects of due process he cannot be an expert on any aspect. Nevertheless, Plaintiff wishes to bring to the Court's attention that Dr. Finkelman, regardless of the prodding and more than 8 hours of questioning did not take the bait. He remained steadfast in stating that his deep and expert understanding of the Due Process clause of the U.S. Constitution is based on the totality of his experience applying due process in the college environment and his long study of its history. There can be no better expert to assist a jury, not in understanding the law to be applied in this case, but in understanding why due process is important, that it is deeply embedded in the fabric of the nation, and that no government entity including

---

28773 (6th Cir. October, 11, 2018) (Attached as Exhibit B); WSU Medical School Professionalism Committee Rules ("The School of Medicine Professionalism Committee will conform to the due process procedures of the Wayne State University Student Code of Conduct and the guidelines for implementing the Student Code of Conduct as adopted by the School of Medicine.")(Attached as Exhibit C, at 5); WSU Promotions Committee Rules ("the Promotions Committee is the institutional entity that ensures that the medical education program has a fair and formal process for taking any action that may affect the status of a medical student, including timely notice of the impending action, disclosure of the evidence on which the action would be based, an opportunity for the medical student to respond, and an opportunity to appeal any adverse decision related to advancement, graduation, or dismissal")(Exhibit D, at 4); and WSU SOM Handbook ("All students who are alleged to have engaged in unacceptable conduct receive fair and impartial consideration of the charges against them and are afforded due process.")(Attached as Exhibit E, at 83).

Defendants may simply make up what it wants due process to be and argue that their idiosyncratic process meets the requirements of the Constitutional Clause.

Defendants spent an inordinate amount of time during Dr. Finkelman's deposition focusing on issues that Dr. Finkelman is not going to testify about. And then when the questioning turned to due process, Counsel spent most of his time trying to create traps for Dr. Finkelman that he resisted, refusing to expand his answers or claim expertise on issues of law—clearly the province of the Court.

The Court in *Doe v. Miami University,* 882 F.3d 579, (6th. Cir. 2018), did not hold as Defendants want this Court to believe, that "due process [is not violated] when [a university] fails to follow its own rules." The Court held that "the mere failure" to follow its internal guidelines does not give rise to a procedural due process violation." *Id.* at 603. Counsel did not ask about procedural due process, but due process as a concept. Thus, Dr. Finkelman's answer was correct. As Counsel should know, not all procedural due process violations are actionable. With respect to Defendants' argument that Dr. Finkelman answered Counsel's question on *academic* dismissals incorrectly, an academic dismissal is not at issue in this case. Plaintiff was accused by a former WSU student of harassment and stalking and Defendants subjected him to a disciplinary process that the Court, even in the decision cited by Defendants, observed would have required a "searching inquiry" that included the very requirements cited by Dr. Finkelman in answer to Counsel's

question. Defendant's Motion to Exclude, at 9; *See* Mbawe v. Ferris State University, *751 Fed.* Appx. 832, 841(6th Cir. 2018)(2018 U.S. Spp. LEXIS 31218,**22 (Nov. 5, 2018). Finally, Dr. Finkelman stated in answer to this question that it was not an issue his report addressed or even that he had thought about. *Finkelman Deposition Transcript* ("Transcript"), at 126 ECF No. 48-3.

After failing to undermine Dr. Finkelman's expertise on the issue of Procedural Due Process, Defendants turn next to character assassination. Defendants attempt to characterize him as a "hired partisan." In support of that claim, they offer an Order barring the testimony of two experts, one of whom was Professor Finkelman, on the ground that the experts' testimony would not be helpful to the jury, characterizing his Report as the "zealous views of an advocate." See Defendant's Mtn. to Exclude, at 10. That case is inapposite as it involved the installation by a private party of a monument of the Ten Commandments in front of the Haskell County Courthouse. Dr. Finkelman was offered as an expert by the American Civil Liberties Union. This case does not involve religious freedom and the testimony to be given and the Report written are both straight forward and not fraught with the type of highly partisan feelings and language at issue in monument cases. Moreover, Defendants fail to put the report before the Court and instead invite the Court to speculate as to what was actually contained in Dr. Finkelman's Expert Report that may have supported the Order.

13

Defendants' claim Dr. Finkelman's report is "littered with hyperbole" is also not supported by a review of the record. Any Report on procedural due process necessarily includes careful and substantial reference to how the law of due process developed and the serious dangers and harms from ignoring due process that is to be expected. The clause was inserted to protect against historical abuses so great as to require its specific inclusion in the Constitution. Dr. Finkelman's Report is not advocacy, and it is not hyperbole. Defendant, without identifying what he views as hyperbole, cites to entire paragraphs of the Expert Report, hoping that the Court will find what Defendants have failed to identify. Take Paragraph 66 cited by Defendants. Dr. Finkelman compares Defendants' treatment of Plaintiff to a "Star Chamber proceeding in which the accused was led to incriminate himself through questions, not given the opportunity to provide evidence of his own, and never informed of the charges against him, or the potential of an outcome that was fatal to his medical school education and his plan to become a physician." *Report*, at 34, ¶ 66. Defendants may be ashamed and alarmed that such an easy comparison may be made, but that is the result of Defendants' decisions and actions, not something that should deny Plaintiff expert testimony. Again, in paragraphs 74-76, Dr. Finkelman addresses the testimony of Dr. Baker and his belief that there is nothing controlling the procedures and process of the Promotions Committee. It is hard to believe that an educated person would make this argument, that the Promotions Committee may

play a disciplinary role, but that is not necessarily their role and that as a result they need have no controlling procedural rules except the ones they choose to have at the time they choose to have them. Dr. Baker advances the ludicrous notion that the Committee alone determines what role they are playing and when, all without providing notice to Plaintiff. *Finkelman Report*, at 37, ¶¶ 74-76.

**3.      Dr. Finkelman's opinion is based on expert knowledge reliably applied in this case that will assist the trier of fact.**

The Sixth Circuit has held that where "[t]he testimony [states] the witness's view of the seriousness of the Defendants' failures," such testimony will assist the trier of fact and there is no abuse of discretion in admitting this testimony. *Heflin v. Stewart County, Tennessee,* 958 F.2d 709, 715-716 (6th Cir. ), *cert. denied,* 113 S.Ct. 598 (1992). Defendants seek to create a new standard for expert witness testimony, namely that an opposing party's expert witness is unqualified unless the witness meets the demands of Defendants' Counsel. Indeed, this in itself is a violation of due process as turning over to an opponent the right to define what is acceptable in inherently unfair and ignores the opponents bias. Dr. Finkelman's experience and qualifications is ultimately an issue for the court that must determine whether it will assist the factfinder. As recently as last month, the Sixth Circuit repeated that as in Daubert,

> "the court will not exclude <u>expert testimony</u> merely because the factual bases for an <u>experts</u> opinion are weak. *Andler v. Clear Channel Broad., Inc.,* 670

> F.3d 717, 729 (6th Cir. 2012)(quotation marks and citations omitted. Exclusion is the exception, not the rule, and "the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'"

*Capitalplus Equity,* 2022 U.S. Dist. LEXIS 1055, *4. (Attached as **Exhibit F**).

Here, Dr. Finkelman's well of expertise runs deep. He is a scholar on the issue of Due Process, what it seeks to protect against and what happens when the right is abrogated. Dr. Finkelman has held nearly every position possible in higher education over a period of forty years and is familiar with the application of due process from the vantage point of student, faculty, administrator, and college president. Finally, Defendants have so badly applied the requirements of due process and created a process that has more in common with the Star Chamber than the Constitutions of the federal government and Michigan and that is why this suit was brought. Otherwise, if a University were able to decide its own process as sufficient all it would do is guarantee that those being prosecuted would always be found guilty.

Accordingly, Defendants' criticism of Plaintiff's expert is properly left for trial. Defendants will get a chance to cross-examine Dr. Finkelman's expertise and his opinions in open court. On the record thus far, Dr. Finkelman has a demonstrated record of scholarship and expertise that will assist the jury in understanding just how far from fair Defendants' process was and harmful to Plaintiff's effort to defend himself.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Exclude Dr. Finkelman from testifying and allow Plaintiff to offer his report and deposition testimony in court as properly admissible and in support of Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment.

Respectfully submitted,

J. ROBERT FLORES ESQ.

By: */s/ J. Robert Flores*
    J. Robert Flores
    Attorney for Plaintiff
    10410 Hampton Rd
    Fairfax Station, VA 22039
    (703)-609-8731
    rfloresesq@me.com
    capeofcod@protonmail.com

    Mark C. Rossman (P63034)
    Elizabeth M. Vincent (P76446)
    ROSSMAN, P.C.
    Attorneys for Plaintiff
    2145 Crooks Road, Suite 220
    Troy, MI  48084
    (248) 385-5481
    mark@rossmanpc.com
Dated: February 14, 2022    liz@rossmanpc.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on February 14, 2022, I caused the foregoing motion to be filed using the Court's electronic filing system, thereby giving notice to all counsel of record and all other ECF participants.

*/s/ J. Robert Flores*
J. Robert Flores
Attorney for Plaintiff
10410 Hampton Rd
Fairfax Station, VA 22039
(703)-609-8731
rfloresesq@me.com
capeofcod@protonmail.com

Mark C. Rossman (P63034)
Elizabeth M. Vincent (P76446)
ROSSMAN, P.C.
Attorneys for Plaintiff
2145 Crooks Road, Suite 220
Troy, MI  48084
(248) 385-5481
mark@rossmanpc.com
liz@rossmanpc.com