# EXHIBIT F

 Neutral

As of: February 14, 2022 5:48 PM Z

# Capitalplus Equity, LLC v. Espinosa Grp., Inc.

United States District Court for the Eastern District of Tennessee

January 4, 2022, Filed

No. 3:18-CV-10-CEA-HBG

### Reporter

2022 U.S. Dist. LEXIS 1055 *; 2022 WL 37354

CAPITALPLUS EQUITY, LLC, Plaintiff/Counter-Defendant, v. THE ESPINOSA GROUP, INC., JUAN ESPINOSA, CAROL ESPINOSA, MICHAEL ESPINOSA, and JAMIJU, LLC, Defendants/Counter-Plaintiffs.

**Prior History:** Capitalplus Equity v. Espinosa Group, 2018 U.S. Dist. LEXIS 241708, 2018 WL 11241973 (E.D. Tenn., Aug. 2, 2018)

## Core Terms

documents, expert report, lending, factoring, challenges, expert testimony, argues, legal conclusion, expert opinion, qualifications, referenced, scientific, practices, lender

**Counsel:** [*1] For CapitalPlus Equity, LLC, Plaintiff, Counter Defendant: F Scott Milligan, LEAD ATTORNEY, Little & Milligan PLLC, Knoxville, TN; W Morris Kizer, LEAD ATTORNEY, Gentry, Tipton & McLemore, PC, Knoxville, TN.

For The Espinosa Group, Inc., Juan Espinosa, Carol Espinosa, Michael Espinosa, Jamiju, LLC, Defendants, Counter Claimants: Arthur F Knight, III, LEAD ATTORNEY, Taylor & Knight, GP, Knoxville, TN; Chris G Mazawey, LEAD ATTORNEY, PRO HAC VICE, Law Office of Richard Mazawey, Clifton, NJ; Richard S Mazawey, LEAD ATTORNEY, PRO HAC VICE, The Law Office of Richard S Mazawey, Clifton, NJ.

**Judges:** Bruce Guyton, United States Magistrate Judge.

**Opinion by:** Bruce Guyton

## Opinion

### MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Consolidated Motion to Exclude Portions of the Expert Testimony of Bruce Latman and Steven Goldstein and Brief in Support Thereof [Doc. 185]. Defendants have responded in opposition [Doc. 189], and Plaintiff replied [Doc. 190]. The Motion is ripe for adjudication. Accordingly, for the reasons explained below, the Court **DENIES** Plaintiff's Motion [Doc. 185].

### I. BACKGROUND

Plaintiff has challenged the [*2] opinions of Defendants' experts, Bruce Latman ("Latman") and Steven Goldstein ("Goldstein"). Latman and Goldstein are Certified Public Accounts ("CPAs") with the accounting firm of Grassi &

Co., CPAs, P.C. ("Grassi") Defendants produced two expert reports: (1) Latman's expert report produced on April 6, 2018, and (2) Latman and Goldstein's expert report produced on January 31, 2020. Plaintiff does not challenge Latman's April 2018 expert report. Plaintiff, however, challenges portions of Latman and Goldstein's January 2020 expert report ("Second Expert Report"). Specifically, Plaintiff challenges Latman's and Goldstein's qualifications to render certain opinions in the Second Expert Report and argues that some of the opinions are not based on facts, they are irrelevant, and they amount to impermissible legal conclusions.

## II. STANDARD OF REVIEW

"*Federal Rule of Evidence 702* obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)* (quoting *Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)*). Specifically, *Rule 702* provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (1) the expert's scientific, technical, or [*3] other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) the testimony is based on sufficient facts or data;
> (3) the testimony is the product of reliable principles and methods; and
> (4) the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid. 702*.

In *Daubert*, the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under *Rule 702*, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *509 U.S. at 589*. The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 176-77 (6th Cir. 2009)*.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cty., Tenn., No. 3:08-CV-25, 2012 U.S. Dist. LEXIS 174926, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012)* (citing *Kumho Tire Co., 526 U.S. at 138-39*). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of [*4] fact in understanding and resolving the factual issues involved in the case." *Coffey, 187 F. Supp. 2d at 970-971* (quoting *Daubert, 509 U.S. at 593-94*). The party offering the expert has the burden of proving admissibility. *Daubert, 509 U.S. at 592 n. 10*.

Further, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." *In re Diet Drugs Prods. Liab. Litig., No. MDL 1203, 2001 U.S. Dist. LEXIS 1174, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001)* (quoting 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000)). This simply means that "a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue." *Id.* (other citations omitted).

Elizabeth Vincent

Finally, "the court will not exclude expert testimony merely because the factual bases for an expert's opinion are weak." Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 729 (6th Cir. 2012) (quotation marks and citations omitted). Exclusion is the exception, not the rule, and "the gatekeeping function established by Daubert was never 'intended to serve as a replacement for the adversary system.'" Daniels v. Erie Ins. Group, 291 F. Supp. 3d 835, 840, 2017 U.S. Dist. LEXIS 198906 (M.D. Tenn. Dec. 4, 2017) (quoting Rose v. Matrixx Initiatives, Inc., No. 07-2404-JPM/tmp, 2009 U.S. Dist. LEXIS 141416, 2009 WL 902311, at *7 (W.D. Tenn. March 31, 2009)) (other quotations omitted). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Rule 702 does not "require anything approaching absolute certainty." Daniels, 291 F. Supp. 3d at 840 [*5] (quoting Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 671-72 (6th Cir. 2010)).

## III. ANALYSIS

Accordingly, the Court has considered the parties' positions in their filings, and the Court finds Plaintiff's Motion [Doc. 185] is not well taken, and the same is **DENIED**.

As mentioned above, Plaintiff challenges Latman's and Goldstein's qualifications to render certain opinions in the Second Expert Report. In addition, Plaintiff challenges other opinions in the Second Expert Report, generally arguing that they are based on inaccurate facts, they are irrelevant, and they amount to impermissible legal conclusions.

The Court will first address Plaintiff's challenges to Latman's and Goldstein's qualifications and then turn to Plaintiff's remaining arguments.

### A. Qualifications

Plaintiff asserts that Latman and Goldstein do not have any experience specifically in the lending and factoring industry, and therefore, any opinion that Plaintiff's actions conformed to the standard custom in the lending and factoring industry, or deviated from proper, lawful, and standard lending and/or factoring practices should be excluded. Defendant responds that Latman and Goldstein have a combined 60-plus years of certified public accounting experience as well as extensive experience in [*6] the construction industry and that they are both qualified to provide expert opinions on the standard finance lending and/or factoring customs and practices at issue in this matter.

The Court finds Latman and Goldstein qualified to render the opinions in the Second Expert Report. Specifically, Latman's resume states that he is the consulting manager at an accounting firm and has been a CPA for over thirty (30) years. [Doc. 144-1 at 28]. Latman specializes in financial management pertaining to internal operations and has experience with financial reporting, auditing, preparation of financial statements, and compilations, tax projections, budgeting, and information technology. [*Id.*]. Latman primarily works with clients in the manufacturing and distribution industry. [*Id.*]. Prior to his employment with his accounting firm, Latman worked as the chief financial officer at a company that manufactured and distributed construction materials and was responsible for the financial reports, human resources, and information technology. Finally, Latman has been member of the America Institute of Certified Public Accounts ("AICPA") for twenty (20) years and has participated in panel discussions for [*7] the Institute of Management Accountants. [*Id.*].

Goldstein is an audit partner at the accounting firm, and

he has experience in construction, labor unions, and sports and entertainment. [*Id.* at 25]. Goldstein regularly contributes to the Grassi & Co. Construction Advisor and various publications. [*Id.*]. In addition, Goldstein teaches construction accounting for the School Construction Authority's mentor program. [*Id.*]. Goldstein is an active member of the New York State Society of Certified Public Accountants ("NYSSCPA"), the AICPA, and the Connecticut of Certified Public Accountants ("CSCPA"). [*Id.*].

Accordingly, given Latman's and Goldstein's professional experience, particularly in the construction industry, and as CPAs, the Court finds them to be qualified to render their opinions in this case.

### 2. Remaining Challenges

Plaintiff generally argues that Latman and Goldstein's opinions are based on factual inaccuracies, they are irrelevant, and they make inadmissible legal conclusions. Specifically, Plaintiff challenges the following opinions contained in the Second Expert Report:

> The documents reviewed were the only documents in the possession of Espinosa and CPE failed to provide Espinosa [*8] with the necessary documents of their transactions during their contractual relationship. Grassi believes this failure of CPE forwarding necessary accounting and financial documents as either a factor or lender does not conform to standard custom in the lending or factoring industry.
>
> Grassi was unable to obtain formal loan statements prepared by CPE on any periodic basis (monthly, quarterly, etc.). Grassi notes that it is typical of a lender to provide its customer with monthly loan statements that detail beginning balance, period activity, ending balance, as well as the calculation of fees during the period.

[Doc. 144-1 at 3-4]. Latman and Goldstein conclude, "Based on the above, it is Grassi's opinion, with a reasonable degree of accounting certainty and probability, that CPE deviated from proper, lawful and standard lending and/or factoring practices in its unlicensed financial relationship with Espinosa." [*Id.* at 5].

First, Plaintiff disputes Latman and Goldstein's statements that it failed to provide Defendants with the above referenced documents. Plaintiff argues that it provided such documents during discovery in this matter, and therefore, the experts' opinion is not based on [*9] facts. Defendants respond that the referenced documents were not produced to them during the contractual relationship. In Plaintiff's Reply, it disagrees and states that the referenced documents were produced during the relationship and the fact that Defendants did not show the referenced documents to their experts demonstrates Defendants' lack of good faith pursuing this issue.

In addition, Plaintiff argues that the above opinions are irrelevant because Defendant The Espinosa Group, Inc. ("TEG") knew that Plaintiff was not a traditional lender and that Defendant Michael Espinosa acknowledged that Plaintiff was not a traditional bank and was not FDIC insured institution. Defendants respond that Plaintiff's argument is better suited for cross examination.

Accordingly, the Court has considered Plaintiff's arguments, and the Court finds that Plaintiff's arguments do not constitute grounds to exclude Latman's and Goldstein's opinions on this issue. *See* [Andler, 670 F.3d at 729](#) ("the court will not exclude expert testimony merely because the factual bases for an expert's opinion are weak") (quotation marks and citations omitted). For

example, if Plaintiff produced the referenced documents to Defendants during the [*10] parties' contractual relationship, which is a disputed fact, Plaintiff may cross examine the experts on this issue and may present evidence showing that the documents were produced. Similarly, if there is evidence that Defendants knew that Plaintiff was not a traditional lender, Plaintiff may present such evidence to the jury to rebut the experts' conclusions. Such arguments, however, are not grounds for exclusion. Accordingly, the Court finds Plaintiff's arguments not well taken.

Further, Plaintiff argues that Latman and Goldstein's opinions on page three (3) regarding the loan documentation and page four (4) regarding monthly statements in the Second Expert Report should also be excluded because the experts do not opine that Defendants were harmed by the alleged lack of documentation, Defendants do not seek damages based on the alleged lack of documentation, and the Counterclaim does not reference the documentation. The Court, however, finds that Plaintiff's arguments are not grounds to exclude the experts' opinions. Latman and Goldstein simply opine that such documents are typically provided by lenders during the contractual relationship and that the alleged failure to provide such [*11] documents is not in accordance with industry standards. The fact that the experts do not explain the specific harm to Defendants by the alleged lack of documentation does not necessarily render the experts' opinions on this issue irrelevant. Further, Plaintiff states that Defendant Michael Espinosa testified that he always knew TEG's balance with Plaintiff, but the Court finds that Plaintiff may present such evidence during cross examination. Plaintiff also states that Defendants have not alleged harm resulting from the lack of documentation, and therefore, there can be no recovery therefor. This argument, however, is better suited for a dispositive motion and does not constitute a reason to exclude the experts' opinion. Accordingly, the Court finds Plaintiff's argument on this point not well taken.

Plaintiff also objects to Latman and Goldstein's use of the word "unlicensed." Specifically, the Second Expert Report states that Plaintiff "deviated from proper, lawful, and standard lending and/or factoring practices in its unlicensed financial relationship with Espinosa." [Doc. 144-1 at 5]. Plaintiff asserts that Defendants cannot cite controlling authority that required Plaintiff to [*12] be licensed in New Jersey, and therefore, the experts' reference to an "unlicensed financial relationship" should be excluded. Defendants assert that it is uncontested that Plaintiff was not licensed to lend money.

The Court has considered the parties' positions, and the Court finds that, similar to the above findings, Plaintiff's concern can be addressed through vigorous cross examination. *Daubert, 509 U.S. at 596* (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). Accordingly, the Court finds Plaintiff's argument on this point not well taken.

Finally, Plaintiff argues that Latman and Goldstein's conclusion that it deviated from the lawful lending and/or factoring practices should be excluded because it is an impermissible legal conclusion. In response, Defendants agree to strike the word "lawful" from the experts' opinion. In its Reply, Plaintiff states that Defendants have realized that Plaintiff is correct, and although Defendants have agreed to delete the word "lawful," this leaves Defendants in the same place—"opinions by Mr. Latman and Mr. [*13] Goldstein for which they have not demonstrated qualifications to render." [Doc. 190 at 2].

*Rule 704* allows an expert's opinion to embrace ultimate issues that will be decided by the jury. *Fed. R. Evid.*

704. It is well established, however, "that testimony offering nothing more than a legal conclusion—*i.e*, testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules." Woods v. Lecureux, 110 F.3d 1215, 1220 (6th Cir. 1997). Based on the above filings, it appears to the Court that Defendants' agreement to strike the word "unlawful" renders Plaintiff's argument moot on this point. *See also* Arrowood Indem. Co. The Lubrizol Corp. v. United States Fire Ins. Co., No. 1:10 CV 2871, 2016 U.S. Dist. LEXIS 156860, 2016 WL 6610806, at *2 (N.D. Ohio Feb. 21, 2016) (allowing the expert to opine that the plaintiff breached a certain industry standard as long as the opinion is ancillary to the ultimate issue). Accordingly, the Court finds Plaintiff's argument on this issue moot.

## IV. CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's Consolidated Motion to Exclude Portions of the Expert Testimony of Bruce Latman and Steven Goldstein and Brief in Support Thereof [Doc. 185].

**IT IS SO ORDERED**.

ENTER:

/s/ Bruce Guyton

United States Magistrate Judge

Elizabeth Vincent

End of Document