UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ANTHONY EID, an individual,

    Plaintiff,

v.

WAYNE STATE UNIVERSITY,
WAYNE STATE UNIVERSITY
SCHOOL OF MEDICINE,
NIKOLINA CAMAJ, MARGIT
CHADWELL, MATT JACKSON,
RICHARD S. BAKER, and
R. DARIN ELLIS, in their individual and
official capacities, jointly and severally,

    Defendants.

Case No: 20-cv-11718

Hon. Gershwin A. Drain
Mag. Judge David R. Grand

---

| | |
|---|---|
| Mark C. Rossman (P63034)<br>Elizabeth M. Vincent (P76446)<br>ROSSMAN, P.C.<br>Attorneys for Plaintiff<br>2145 Crooks Road, Suite 220<br>Troy, MI 48084<br>(248) 385-5481<br>mark@rossmanpc.com<br>liz@rossmanpc.com<br><br>J. Robert Flores<br>Attorney for Plaintiff<br>Seeking EDMI Admission<br>10410 Hampton Road<br>Fairfax Station, VA 22039<br>(703) 609-8731<br>rfloresesq@verizon.net | KIENBAUM HARDY VIVIANO<br> PELTON & FORREST, P.L.C.<br>By: Elizabeth Hardy (P37426)<br>    David Porter (P76785)<br>Attorneys for Defendants<br>280 N. Old Woodward Ave., Suite 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>ehardy@khvpf.com<br>dporter@khvpf.com |

---

**Defendants' Reply in Support of Motion for Summary Judgment**

# INTRODUCTION

The public relies on medical schools to ensure that those who wish to practice medicine are fit to do so. This is an incredibly important responsibility, one that the WSU School of Medicine takes seriously. The School carries out that obligation, in part, by training its students on professionalism as part of its curriculum and, when professionalism breaches occur, assessing students' fitness to be doctor. That assessment is multifaceted and involves consideration of characteristics like "integrity," "self-awareness," and other intangible variables that administrators have expertise in evaluating. (Ex. 1A, Handbook, pp. 18, 83.)

It is little wonder, then, that when the School learned that one of its students, Anthony Eid, was continuously sending deceptive texts to a former student to obtain her private passwords and extremely sensitive information under false pretenses, it opened a professionalism inquiry into his conduct. How Eid responded determined his fate: Eid's duplicitous statements and evasive conduct before the Committees—which were comprised of longtime educators, academics, private-practice physicians and medical students—revealed a deep-seated skepticism that his conduct had any bearing on his fitness to be a doctor. That behavior, which is attested to by members of the Promotions Committee (the decisionmakers) in undisputed declarations, is difficult to fully capture on the page. So, it bears repeating, in the Committee's own words, the description of Eid's conduct:

1

> Given the inconsistencies in his written statements between his purported acknowledgement of wrongdoing and his assertions that it did not bear on his fitness to be a doctor, members of the committee sought to learn whether Mr. Eid *sincerely* understood the severity of character deficiency and whether he had the capacity for self-improvement. Mr. Eid's conduct before the committee established without question that he lacked the capacity for the kind of fundamental change necessary to avoid similar professionalism lapses in the future."

* * *

> Based on my observation of Mr. Eid's demeanor and the evasive, combative nature of his responses, I determined that Mr. Eid's purported claims of contrition in writing and before the committee were completely insincere, said only to placate members of the committee—a troubling confirmation that Mr. Eid did not have the capacity for self-awareness, self-improvement, and personal responsibility.

(Dr. Gray Dec., ECF No. 43-2, PageID.808–809.) As this assessment shows, the Committee was best positioned, by both institutional expertise and firsthand perspective, to determine whether Eid had the capacity for professionalism that is required of medical doctors. They unanimously agreed that Eid's character deficiencies were so profound that he should be expelled from medical school

That decision is entitled to substantial deference, a conclusion that even Eid does not dispute given that he has abandoned any substantive due process challenge. What remains of Eid's case is a smattering of procedural grievances that all start from the wrong premise. Under long-standing precedent, academic dismissals like Eid's need not be preceded by the full panoply of procedural requirements that might be expected in other settings. Eid's failure to grapple with that reality should persuade this Court to grant Defendants' summary judgment motion.

2

# ARGUMENT

**I.       Eid avoids the crux of the case: his dismissal was an academic decision that requires "far less stringent" procedural protections.**

Eid's Response does not address *the* pivotal issue in this case: whether the process afforded to him satisfied the due process requirements for *academic* dismissals. There is no dispute that the conduct that led to Eid's dismissal was a serious professionalism concern for the School of Medicine ("SOM"). Eid admitted, after all, at the outset of the investigation that he had engaged in egregious misconduct that raised severe professionalism concerns. Additionally, Eid does not dispute, in the context of this motion, that lack of professionalism is an academic judgment. Nor does he dispute that, if his dismissal is considered academic, the process afforded him was constitutionally sufficient.

Instead, Eid's argument starts from the premise that the University Student Code of Conduct and the Interim Administrative Hearing Guidelines for the Student Code of Conduct should have governed the proceedings that led to his dismissal. That premise is wrong. As explained below, neither set of procedures applied to Eid's professionalism inquiry. Once that faulty premise is removed, the entirety of this due process argument falls.

Eid argues that the Professionalism Committee Bylaws obligated SOM to follow the University's Student Code of Conduct in lock step. Eid cites the following language in those Bylaws to support this proposition but ignores the emphasized

3

language, which completely undercuts his premise: "The School of Medicine Professionalism Committee will conform to the due process procedures of the Wayne State University Student Code of Conduct and the guidelines for implementing the Student Code of Conduct *as adopted by the School of Medicine*." (MSJ Ex. 1C, ECF No. 43-5, PageID.959 (cited at Response, ECF No. 54, PageID.1730.)  As is its prerogative, the SOM has not adopted every facet of the University Code of Conduct or the Interim Guidelines, especially not the ones cited by Eid. And, as Dr. Jackson, the Chair of the Professionalism Committee, has confirmed under oath, the University's Student Code of Conduct does not apply to the SOM's professionalism hearing process. (Jackson Dep., ECF No. 44-6, PageID.1143, p. 117.)

     Eid also advances the argument that this matter should have been treated as a Student Code of Conduct complaint because Dr. Jackson referred to Roe as "the charging party," and whenever a "charge" is involved it is exclusively a Student Code of Conduct matter. (Response, ECF No. 54, PageID.1728–29.) But he ignores the fact that "charge" is also a term used in the Professionalism Committee Bylaws that has a distinct meaning specific to the professionalism inquiry process. (Prof. Comm. Bylaws, ECF No. 43-5, PageID.963.) Thus, the fact that Dr. Jackson considered Roe the "charging party" does not prove, or even suggest, that the Student Code of Conduct applied.

4

Eid attempts to stir up further confusion with his discussion of Camaj's testimony – which he describes as "dissembling" (whatever that means). (Response, ECF No. 54, PageID.1729.) Eid accuses Camaj of "deceptive[ly]" testifying that "there were no charges to specify [in her initial letter to Eid] because no one had filed charges against Plaintiff." (*Id.* at PageID.1728.) This is deceptive, Eid says, because Dr. Jackson admitted that there were "charges" by referring to Roe as the charging party. But Eid is conflating two different uses of the term "charge," and he knows it. In the passage of Camaj's testimony that Eid quotes, Camaj was referring to the term "charge" as it is used in the Student Code of Conduct—not the Professionalism Committee Bylaws. (Camaj Dep. ECF No. 44-5, PageID.1131, p. 94.) And she testified, accurately, that no Code of Conduct charge was filed against Eid. (*Id.*) That, in turn, directly *refutes* Eid's argument because, as Camaj explained, the Student Code of Conduct procedures that Eid claims should have applied in his case apply only when the charging party elects to file under the Student Code of Conduct.

As for the Interim Guidelines, by their own terms, they "appl[ied] only in those cases in which [the University] undertakes an investigation into alleged student misconduct, whether *by a Title IX investigator* or by an individual who has been authorized to conduct an investigation *under the Student Code of Conduct*." (ECF

5

No. 54-20, PageID.2365.) This was not a Title IX case, nor was Camaj charged with conducting an investigation under the Student Code of Conduct.

A careful reading of Eid's response shows that he recognized that the Interim Guidelines are limited in scope. Recognizing that the Interim Guidelines apply only to Title IX proceedings (which, by definition, involve allegations of *sexual* misconduct), Eid attempts to recast his proceedings as a quasi-Title IX proceeding. (Response, ECF No. 54, PageID.1734–38.) He suggests, for example, that it is "reasonable to infer in favor of Plaintiff . . . that the hearing focused on allegations of sexual predation and harassment that included the use of lies and impersonation." (*Id*. at PageID.1734.)

That is *not* a reasonable inference because the record *refutes* it. Dr. Baker and Dr. Jackson, who were both present during the Committee hearings (though not voting members), testified that no one considered Eid's conduct toward Roe to be sexual in nature. (Ex. 31, Jackson Dep., p. 72 ("I don't recall there being the discussion in the committee that there was like a sexual element of it."); Baker Dep., ECF No. 46, PageID.1170, pp. 46–47 (same regarding Promotions Committee). And no decision maker considered this a sexual misconduct matter. (*See* Ex. 15, Braun Dec., ¶ 16; Ex. 16, Waineo Dec., ¶ 16.) The Committee's decision was "based solely on Mr. Eid's conduct, including his oral and written statements and his presentation before the committee." (Dr. Gray Dec., ECF No. 43-2, PageID.810 ¶ 20.)

Eid resorts to the "reasonable inference" concept throughout his Response, each time asking this Court to speculate in contravention of undisputed testimony and affidavits of witnesses with firsthand knowledge of the Promotions Committee's deliberations and decision. (*Cf.* Response, ECF No. 54, PageID.1734–40.) Eid has supplied no affidavit to the contrary, nor has he identified specific facts in the record that refute this evidence. In effect, Eid "base[s] [his] opposition to summary judgment entirely on the hope that a fact finder will disbelieve the persons who have submitted affidavits," something he cannot do. *See Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 353–54 (6th Cir. 2004) (quotation marks and citation omitted); *see also Ferrari v. Ford Motor Co.*, 826 F.3d 885, 897–98 (6th Cir. 2016) ("Conclusory allegations, speculation, and unsubstantiated assertions . . . are not enough to defeat a well-supported motion for summary judgment." (quotations and citation omitted)).

This, in turn, answers Eid's heavy reliance on *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), and *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). (*See* Response, ECF No. 54, PageID.1729–30, 1736–38.) Both cases involved Title IX proceedings that featured competing narratives about alleged sexual misconduct that were material to the outcome. Those cases do not apply to academic dismissals. Eid was not accused of sexual misconduct, nor were there competing narratives between

7

Eid and Roe that were material to the Committee's decision, facts which Eid conveniently ignores. (*See* Ex. 15, Braun Dec., ¶ 16; Ex. 16, Waineo Dec., ¶ 16.)

Eid's myopic focus on *Baum* ignores the reality that he was dismissed from medical school not because he engaged in sexual misconduct, but because he demonstrated to the Committee a fundamental lack of integrity, self-awareness, and capacity for the kind of fundamental change necessary to uphold the School's and the medical profession's professionalism values. The Committee's rationale for Eid's dismissal is supported by affidavit testimony – all of which is unrebutted. *Baum* and its cross-examination requirement are therefore inapplicable.

In short, the proceeding that led to Eid's dismissal was a professionalism inquiry conducted by the School of Medicine according to the procedural guidelines set forth in the Committee Bylaws and School of Medicine Handbook. That process provided him all the procedural protections required for academic dismissals. He was given notice and "fully inform[ed] of the [School]'s dissatisfaction" of his performance, as shown through his own statements acknowledging in great factual detail the concerning conduct and his admissions that his conduct raised "severe[]" professionalism concerns.[1] He had full opportunity to see all the materials submitted

---

[1] Eid faults Ms. Robichaud for not giving him "useful information for his defense," but he does not explain why that constitutes a lack of notice, especially considering that Dr. Jackson had already provided him sufficient notice of the School's

8

to the decisionmakers in advance of his two hearings, which are not constitutionally required.[2] And the Promotions Committee came to a "careful and deliberate" decision,[3] after which Eid also pursued *two* appeals, which also are not constitutionally required. Accordingly, the process that the University provided Eid was far more than is necessary to satisfy any due process rubric, especially the "far less stringent" one for academic dismissals. *See Yaldo v. Wayne State Univ.*, 266 F. Supp. 3d 988, 1006 (E.D. Mich. 2017) ("The procedural protections Plaintiff received [during WSU SOM's professionalism hearing process] exceeded those required for an academic dismissal.").

One more point regarding the procedural due process claim. Eid does not argue he has a protected *property* interest in his continued education at WSU. (*See* Response, ECF No. 54, PageID.1726–27.) He claims only a protected *liberty* interest

---

dissatisfaction with his professionalism performance ahead of the Professionalism Committee hearing.

[2] Eid complains that Dr. Chadwell asked that the initial email exchange between her and Roe's mother not be included in the materials sent to the Professionalism Committee. But Eid fails to note that, according to undisputed record evidence, she did that *for Eid's benefit* because it suggested that Roe could obtain a personal protection order against Eid. Dr. Chadwell did not want that suggestion to taint the Committee's consideration of Eid's professionalism. (Chadwell Dep., ECF No. 44-4, PageID.1122, p. 69.) Moreover, Eid does not explain why the correspondence containing the prejudicial information would have assisted him or the Committee.

[3] Eid also speciously accuses Chadwell and Robichaud of somehow negatively influencing the decision-making process, but he points to no evidence that either Dr. Chadwell or Robichaud had any communication with the voting members of the Committees. (*See* Response, ECF No. 54, PageID.1730–33.)

9

in his good name and reputation. (*Id.*) As Defendants argued before, alleged damage to reputation is not enough to claim a cognizable liberty interest under the 14th Amendment. Eid must allege that a right or status previously recognized by state law was distinctly altered or extinguished. *Paul v. Davis*, 424 U.S. 693, 711 (1976). *Goss*, the case cited by Eid, does not say otherwise. As the Supreme Court subsequently explained:

> While the Court [in *Goss*] noted that charges of misconduct could seriously damage the student's reputation, it also took care to point out that Ohio law conferred a right upon all children to attend school, and that the act of the school officials suspending the student there involved resulted in a denial or deprivation of that right.

*Paul v. Davis*, 424 U.S. 693, 710 (1976). In other words, even *Goss* requires something more than mere reputational damage to establish a cognizable liberty interest. Eid does not claim a right to attend WSU or its medical school, which distinguishes his case from *Goss*, nor does he otherwise allege that a right or status previously recognized by state law was distinctly altered or extinguished, *cf. Paul v. Davis*, 424 U.S. 693, 711 (1976). Without a cognizable liberty interest, Eid's procedural due process claim fails.

## II. Eid effectively concedes the rest of his claims.

The rest of the Response requires little discussion. Eid agrees that immunity bars his claims for monetary relief. And Eid has waived any claim for violation of substantive due process by failing to brief the claim. *See Hua v. Home Depot U.S.A.,*

*Inc.*, 452 F. Supp. 3d 698, 704 (E.D. Mich. 2020) ("A plaintiff's failure to address a claim in response to a motion for summary judgment on that claim demonstrates abandonment and waiver of the claim." (citing cases)). The same goes for his Equal Protection Clause claim, which is nowhere mentioned. *Id*. Furthermore, Eid effectively concedes his Title IX claim by failing to address how he and Roe (the only alleged comparator) are "similarly situated," which is a required element of a Title IX claim. *See Doe v. Univ. of Dayton*, 766 F. App'x 275, 280 (6th Cir. 2019); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Eid having made no effort to the defend the rest of his claims in response to the authority to presented by Defendants, this Court should grant summary judgment on all the claims, in addition to Eid's due process claim.

## CONCLUSION

Defendants ask this Court to grant their motion for summary judgment in full.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.

By: /s/ *Elizabeth Hardy*
    Elizabeth Hardy (P37426)
    David Porter (P76785)
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
dporter@khvpf.com

Dated: March 11, 2022
442011

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ *Elizabeth Hardy*
Elizabeth Hardy
Kienbaum Hardy
  Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
E-mail: ehardy@khvpf.com
(P37426)